Argued and submitted February 2, 1995; resubmitted In Banc February 7, affirmed
February 21, petition for review denied July 23, 1996 (323 Or 690)

## In the Matter of the Compensation of
## Douglas R. Baar, Claimant.

### Douglas R. BAAR,
*Petitioner,*

*v.*

### FAIRVIEW TRAINING CENTER
### and SAIF Corporation,
*Respondents.*

### (WCB 92-13378; CA A84296)

911 P2d 1232

James L. Edmunson argued the cause for petitioner. With him on the brief was Malagon, Moore, Johnson & Jensen.

Michael O. Whitty, Special Assistant Attorney General, argued the cause for petitioners. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

DEITS, J.

**DEITS, J.**

Claimant seeks review of an order of the Workers' Compensation Board that held, *inter alia*, that his hypertension condition was not compensable and that housekeeping services recommended by his treating physician were not reimbursable medical services. We affirm.

In 1986, claimant developed left knee problems after he slipped and fell on some stairs. One year later, in August 1987, claimant began working at Fairview Training Center, where he worked until March 1988. In 1989, a referee determined that claimant's work activities there independently contributed to a worsening of his left knee condition, thus making Fairview and its insurer, SAIF, responsible for claimant's related medical expenses. Claimant underwent surgeries on his left knee in 1988, 1989, 1990 and 1991, and he had extensive physical therapy after each surgery. During those surgeries and subsequent therapy, claimant experienced "severe stress, primarily related to his left knee condition and frustration dealing with various SAIF claims adjusters." In January 1992, claimant suffered a hypertensive crisis during a therapy session. He experienced chest pain, shortness of breath, headaches and dizziness. Before that attack, claimant had not been treated for hypertension. Dr. Francis, an internist and cardiologist, diagnosed claimant with essential hypertension, a condition that has no known etiology. Claimant's hypertension condition worsened to the degree that it required medical treatment. He requested that SAIF process that condition as part of his accepted left knee claim, but SAIF denied the compensability of his hypertension. On October 15, 1992, claimant requested a hearing on SAIF's denial.

In the meantime, claimant, on the recommendation of Dr. Raczka, his treating orthopedist, hired Cissy Cleaning Service to clean his house and bought a pair of Nike orthotic shoes. On August 24, 1992, claimant submitted the charges for the housekeeping service and the shoes to SAIF. After SAIF failed to take action on those claims within 90 days, claimant requested a review by the Director of the Department of Insurance and Finance. On February 17, 1993, the Director issued a final order, which concluded that the shoes

were reimbursable medical services but that the housekeeping services were not. On March 8, 1993, claimant filed a supplemental request for a hearing on the Director's final order.

On June 28, 1993, the referee issued an opinion and order setting aside SAIF's denial of claimant's hypertension condition and reversing the Director's decision regarding housekeeping services. The referee concluded that claimant's hypertension condition was a "consequential condition" under ORS 656.005(7)(a)(A) that was "caused in major part by his compensable left knee injury and its sequelae." With respect to the housekeeping services, the referee determined that under *Pamela J. Panek*, 44 Van Natta 1645 (1992), those services qualified as medical services under ORS 656.245(1). However, on July 9, 1993, the referee, relying on *Lorenzen v. SAIF*, 79 Or App 751, 719 P2d 1336, *rev den* 301 Or 667 (1986), and *Maxine V. McInnis*, 42 Van Natta 81 (1990), issued an order on reconsideration reversing himself on the issue of housekeeping services and, consequently, affirming the Director's final order.

SAIF sought review by the Workers' Compensation Board of that part of the referee's order setting aside its denial of claimant's hypertension claim. Claimant sought review of that part of the referee's order affirming the Director's conclusion that housekeeping services are not reimbursable medical services. With respect to claimant's hypertension claim, the Board, applying ORS 656.005(7)(a)(A), reversed the referee's order:

> "The Referee found that claimant's hypertension is compensable as it is related to his compensable left knee condition under ORS 656.005(7)(a)(A). We agree that ORS 656.005(7)(a)(A) applies to this claim, because the hypertension condition is only indirectly related to the compensable injury. *See Albany General Hospital v. Gasperino*, 113 Or App 411, 414 (1992).

> "The court has specifically held that, under ORS 656.005(7)(a)(A), '*any* injury or condition that is not *directly* related to the industrial accident is compensable *only if* the major contributing cause is the compensable injury.' *Hicks v. Spectra Physics*, 117 Or App 293, 297 (1992). * * *

"A finding of 'major' causation requires that the injury contributes more to the claimed condition than all other causes, explanations, or exposures combined * * *.

"* * * * *

"Although all physicians indicate that claimant's compensable injury is a contributing factor to his hypertension condition and need for treatment, none of the physicians have stated that the compensable injury is *the* major contributing cause. On this record, claimant has not established that the compensable injury contributed more to his hypertension than any other factor. 'Magic words' are not required to establish compensability of a claim. *McClendon v. Nabisco Brands, Inc.*, 77 Or App 412 (1986). However, considering the non-injury factors and the fact that claimant's hypertension condition preexisted the injury, we do not consider the medical opinions sufficient to satisfy the compensability standard." (Emphasis in original.)

The Board also affirmed the referee's order on reconsideration, holding that housekeeping services are not medical services under ORS 656.245(1):

"On the merits of the 'medical services' issue, we are bound by *Lorenzen v. SAIF*, 79 Or App 751, 752[, *rev den* 301 Or 667] (1986), which held that compensable medical services include only those 'other related services' which are 'of the same kind or class as those services specifically enumerated in [ORS 656.245(1)].' In this case, housekeeping help was recommended solely because of claimant's inability to perform household chores. Under these circumstances, we cannot say that housekeeping help is of the same kind or class as those services specifically enumerated in the statute. *See* ORS 656.245(1)(c).[1] Accordingly, on this record, we conclude, as did the Referee and the Director, that there is no showing that housekeeping services are reimbursable medical services under ORS 656.245."

On reconsideration, the Board affirmed its decision pertaining to the compensability of claimant's hypertension condition:

"[A]s noted in our prior order, Dr. Francis states that the compensable injury *and the attendant claims processing* are

---

[1] In 1995, the legislature renumbered ORS 656.245(1)(c) as ORS 656.245(1)(b). For ease of reference, we refer to the statute as renumbered.

the major cause of claimant's hypertension * * *. Dr. Francis did not opine that the compensable injury (without claims processing) was the major contributing cause of claimant's hypertension. Consequently, we continue to adhere to our previous conclusion that claimant has not established that his *compensable injury* is the major contributing cause of his hypertension condition." (Emphasis in original.)

■       Claimant first assigns error. to the Board's application of ORS 656.005(7)(a)(A) to determine the compensability of his hypertension condition. Claimant argues that, because the Board mentioned[2] that his hypertension was a preexisting condition, it should have applied ORS 656.005(7)(a)(B). Claimant asserts that the Board should have determined, under ORS 656.005(7)(a)(B), whether his knee injury "was the major cause of any particular need for treatment or degree of disability" rather than determining, under ORS 656.005(7)(a)(A), "whether the injury was the major cause of the hypertension condition itself." However, we decline to address that argument, because claimant failed to preserve it below. Our review of the record indicates that claimant actually argued to the Board that the referee correctly applied ORS 656.005(7)(a)(A) to his claim:

> "Claimant respectfully requests the Board affirm and adopt the referee's finding of fact and conclusions of law relative to his decision to set aside SAIF's denial of treatment for hypertension. The referee applied the correct test and concluded that all reliable medical evidence supported claimant's position."

Accordingly, we will not address claimant's first assignment of error. ORAP 5.45(2); *see also EBI Ins. Co. v. Chandler*, 112 Or App 275, 828 P2d 1047 (1992).

■       Claimant next argues that the Board erred in considering the actions of employer and SAIF in processing his knee injury claim as "non-injury" factors for purposes of

---

[2] The Board did not expressly find that claimant's hypertension was a preexisting condition. In its findings of fact, the Board adopted the findings of the referee, which included the ambiguous statement "[c]laimant had no prior treatable hypertension." In its conclusions of law, the Board, in the context of discussing whether the compensability standard was met, noted that claimant's hypertension preexisted his knee injury, but it did not analyze the claim as involving a preexisting condition.

determining compensability of his hypertension condition under ORS 656.005(7)(a)(A). In particular, claimant argues that "an employer's or its insurer's delay in providing compensation in an injury claim should be considered part of the direct consequence of the industrial injury itself."

ORS 656.005(7)(a)(A) provides:

> "A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

> "(A) *No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition.*" (Emphasis supplied.)

As the case was presented by the parties to the Board, claimant's accepted left knee condition is the "compensable injury" and claimant's hypertension condition is "a consequence of a compensable injury." Under the above statute, a consequential condition is compensable only if it was caused in major part by the original compensable injury. Claimant argues, however, that the actions of an employer or its insurer in processing a claim are part of a claimant's original "compensable injury" for purposes of determining whether that compensable injury was the major contributing cause of the consequential condition, here, claimant's hypertension.

Particularly in view of our recent decision in *Roseburg Forest Products v. Zimbelman*, 136 Or App 75, 900 P2d 1089 (1995), we are not persuaded by claimant's argument. In that case, the claimant developed bilateral carpal tunnel syndrome and the employer accepted his claim for that condition. Shortly thereafter, the claimant developed a cervical condition, for which the employer denied compensability. Nonetheless, the claimant underwent surgery, which left him temporarily totally disabled. After the surgery, the claimant became "focused" on his disability and the denial of

his claim. In the two weeks preceding his death, the claimant's emotional and physical condition deteriorated. The claimant became "extremely worried" that he would not receive the amount of compensation to which he thought he was entitled. When he received his compensation check, he believed that it was not sufficient. He became extremely agitated, suffered a myocardial infarction, and died.

The claimant's beneficiary sought compensation for the claimant's myocardial infarction on the ground that it was a "consequential condition" caused by the stress of his compensable injuries. The employer denied the claim, but the referee set aside the denial and the Board affirmed. The Board held:

> " '[C]laimant's myocardial infarction was caused, in major part, by his emotional upset over his inability to work, his pain, and his reaction to the employer's processing of his claim, including the disputed temporary disability check. All of these factors are sequelae of claimant's compensable injuries.' "

On appeal, the claimant's beneficiary argued that the "circumstances surrounding a compensable injury" should be considered part of the compensable injury for purposes of determining compensability of consequential conditions under ORS 656.005(7)(a)(A). *Id.* at 78. We disagreed and reversed the Board. We first concluded that, under the plain language of ORS 656.005(7)(a)(A), emotional stress relating to a compensable injury is not considered part of that compensable injury:

> " 'Compensable injury' is defined by statute as 'an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death * * *.' ORS 656.005(7)(a). Under that definition, the compensable injury is the medical condition that results from the accidental injury and is not the aftereffects of that condition. *See Albany General Hospital v. Gasperino*, 113 Or App 411, 833 P2d 1292 (1992) * * *. Accordingly, the Board erred in treating claimant's emotional condition as part of the original compensable injuries." *Id.* at 79.

We did hold, however, that, although the claimant's emotional condition could not be considered as part of the

original compensable injury, it could be compensable as a consequential condition, itself, if it were caused in major part by the original compensable injury. We took the analysis one step further and concluded that, if the emotional condition were found to be compensable as a consequence of the original injury, the myocardial infarction could, in turn, be compensable as a consequential condition if caused in major part by the claimant's emotional condition. However, in that discussion, we noted that, to the extent that the claimant's stress was caused by his reaction to the claims process, it could not be considered as being caused by the compensable injury:

> "The Board found that claimant's emotional state was also caused in part by claimant's reaction to the processing of his claim and his belief that the amount of compensation was incorrect. A claimant's reaction to the amount of compensation and to claims processing is not caused by the compensable injury; it is caused instead by the process by which the claimant is compensated for the injury." *Id.* at 79 n 2.

If a claimant's stress pertaining to the claims process cannot be said to be caused by the compensable injury, it necessarily follows that the actions of the employer and its insurer in processing an injury claim are not *part of* the compensable injury. Thus, we conclude that the Board properly considered the actions of employer and its insurer in processing claimant's injury claim as "non-injury" factors for purposes of ORS 656.005(7)(a)(A).

■    Finally, claimant asserts that the Board erred in concluding that, under ORS 656.245(1)(b), housekeeping services were not reimbursable medical services related to his accepted left knee claim. At the outset, we note that the legislature recently amended ORS 656.327(2) to provide for direct review by the Court of Appeals of orders by the Director of the Department of Consumer and Business Services pertaining to medical services. Or Laws 1995, ch 332, § 41. The amended version of that statute is applicable in this case. *Volk v. America West Airlines*, 135 Or App 565, 899 P2d 746 (1995). Generally, it has been our practice to remand all cases in which there has been *any* change in the pertinent language of the statutes and where there is *any* possibility that the change may alter our analysis of the case in any

way. We have remanded such cases in order to allow the Board to consider the matter in the first instance. However, we have made an exception to that practice when it is certain that the change will not alter our analysis in any way and when remand will serve no purpose.

■　　This case comes within the above exception to the general rule. Here, claimant obtained review of the Director's order by a hearings referee and then by the Board under the law as it existed at that time. Although the amendment to the statute did change the process for review of this type of issue, under the circumstances here, that change will not alter our analysis. The Director has, in fact, already ruled on the issue presented here. Nothing in the statute on which the Director based his decision has been changed by the new law. It would serve no purpose to reverse and remand this issue to the Board with instructions to vacate that portion of its order. Accordingly, we will review the Director's order, pursuant to ORS 183.310 *et seq*, as if claimant had sought our review directly under the amended version of ORS 656.327(2).

ORS 656.245(1)(b) provides, in part:

> "Compensable medical services shall include medical, surgical, hospital, nursing, ambulances *and other related services*, and drugs, medicine, crutches and prosthetic appliances, braces and supports and where necessary, physical restorative services." (Emphasis supplied.)[3]

In interpreting a statute, our goal is to discern the intent of the legislature, starting first with an examination of the statutory text and its context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Neither the text nor its context indicates whether the legislature intended housekeeping services to constitute compensable medical services. The underlying legislative history is equally unrevealing. However, applying the rule of *ejusdem generis*, we conclude that, because housekeeping services are not of the "same kind or class" as those listed in the statute,

---

[3] In 1995, the legislature amended ORS 656.245(1), Oregon Laws 1995, chapter 332, but did not change the definition of compensable medical services under ORS 656.245(1)(b).

the legislature did not intend housekeeping services to be compensable medical services under ORS 656.245(1)(b). *See Lorenzen v. SAIF*, 79 Or App 751, 719 P2d 1336, *rev den* 301 Or 667 (1986) (concluding that child care services are not compensable medical services). Accordingly, the Board did not err in concluding that housekeeping services are not compensable medical services under ORS 656.245(1)(b).

Affirmed.