Argued and submitted January 24, 1996, affirmed April 30, 1997

In the Matter of the Request for
Change of Attending Physician.

LIBERTY NORTHWEST INSURANCE CORPORATION
and Redman Homes,
*Petitioners,*

*v.*

Ruben F. VASQUEZ,
*Respondent.*

(H94-048; CA A88866)

938 P2d 237

James D. McVittie argued the cause and filed the brief for petitioners.

Linda Love argued the cause for respondent. With her on the brief were Annette E. Talbott and Craine & Love.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Insurer seeks review of an order of the Director of the Department of Consumer and Business Services that approved claimant's request to change his attending physician. The only issue on review is whether the director's order complies with ORS 656.245(2)(a).[1] We review the director's final order for substantial evidence and errors of law, ORS 183.482(7), (8), and affirm.

Claimant suffered a compensable injury in 1989 when a mobile home wall weighing more than 400 pounds fell on him. The parties stipulated that claimant had exceeded his three statutory choices of an attending physician under ORS 656.245(2)(a) when he sought to designate Dr. Puziss as his attending physician. The Workers' Compensation Division's Benefit Consultation Unit approved the change and insurer challenged that decision. An administrative law judge issued a preliminary order that concluded that the approval violated the statute because the Benefits Consultation Unit had not sought the advice of one or more physicians before approving the change. The director gave notice of his intent to review the preliminary order.

---

[1] When the director issued his final order, the relevant statute was *former* ORS 656.245(3)(a). *Former* ORS 656.245(3)(a) provided:

"The worker may choose an attending doctor or physician within the State of Oregon. The worker may choose the initial attending physician and may subsequently change attending physician two times without approval from the director. If the worker thereafter selects another attending physician, the insurer or self-insured employer may require the director's approval of the selection and, if requested, the director shall determine with the advice of one or more physicians, whether the selection by the worker shall be approved."

The legislature renumbered that provision in 1995 as ORS 656.245(2)(a) and amended it to add the following two sentences:

"The decision of the director is subject to a contested case review under ORS 183.310 to 183.550. The worker also may choose an attending doctor or physician in another country or in any state or territory or possession of the United States with the prior approval of the insurer or self-insured employer."

The 1995 version of the statute applies retroactively to pending proceedings. Or Laws 1995, ch 332, § 66; *Volk v. American West Airlines*, 135 Or App 565, 568, 899 P2d 746 (1995), *rev den* 322 Or 645 (1996). Thus, we are required to apply the 1995 version of the statute. However, because we conclude that the addition of the two sentences in 1995 does not affect the issue in this proceeding, it is not necessary for us to remand the proceeding to the director to interpret and apply the 1995 version of the statute to it. *Baar v. Fairview Training Center*, 139 Or App 196, 204-05, 911 P2d 1232, *rev den* 323 Or 690 (1996).

The director subsequently issued an order approving the change in attending physician. In his order, the director relied on guidelines developed by the Medical Director for the division that outlined some "[c]ircumstances under which a change [of attending physician] may be approved" and some "circumstances under which a change may be disapproved." The director announced in the order a general policy position, adopted pursuant to ORS 183.355(5),[2] that, when ORS 656.245(2)(a) required the division to decide whether to approve a claimant's change in attending physician, the division could use "the Medical Director's guidelines and/or, as needed, the advice of the Medical Director." The director held that that policy satisfied the statutory requirement that the division get advice from "one or more physicians" in deciding whether to approve a change of physician. The director concluded that, in the light of claimant's circumstances and the advice of the Medical Director in the guidelines, the change in claimant's attending physician was appropriate.

Insurer argues that ORS 656.245(2)(a) plainly states that the director can approve a change of attending physician only after getting advice from a physician about the change that is directly related to the claimant's case. We disagree. The statute can be read to embody insurer's interpretation, but it also can be read to embody the director's interpretation. The insurer's interpretation assumes that the advice must be specific to the particular person requesting a change; the director's interpretation assumes that the advice can be generic or specific, depending on the circumstances. An analysis of the statute's context does not reveal which meaning the legislature intended.

Because both interpretations are plausible, we turn to legislative history. *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994); *Carroll v. Boise Cascade Corp.*, 138 Or App

---

[2] ORS 183.355(5) provides:

"No rule of which a certified copy is required to be filed shall be valid or effective against any person or party until a certified copy is filed in accordance with this section. However, if an agency, in disposing of a contested case, announces in its decision the adoption of a general policy applicable to such case and subsequent cases of like nature the agency may rely upon such decision in disposition of later cases."

610, 616, 910 P2d 1111 (1996). We conclude that the director's interpretation is consistent with the legislature's intent in enacting the statute. The legislature enacted the relevant portion of the statute as part of Senate Bill 48 in 1979. Or Laws 1979, ch 839, § 32. In the only legislative history specifically addressed to the provision, Representative Chrest, the carrier of the bill in the House, stated that the limit on changing physicians was included in the bill "to address the abuse termed as doctor shopping whereby the worker seeks a doctor simply to find one [who] will testify favorably on [the worker's] behalf." *House Floor Debate on SB 48*, 60th Or Legis Ass'y, July 3, 1979. According to the carrier of the bill in the Senate, Senator Kulongoski, the overall purpose of Senate Bill 48 was to create a more efficient administrative system. Senator Kulongoski explained:

> "I would hope that you would recognize that once again, and this may be a shortcoming of this legislative body, that this is again an administrative remedy. We have not changed the substantive law on workers' compensation, but we are continuing, as [we did] last session, [to attempt] to streamline and bring the administrative process into a system in which we will have a [minimum] of administrative expense."

*Senate Floor Debate on SB 48*, 60th Or Legis Ass'y, May 8, 1979. Another proponent of the bill, Senator Trow, stated that "[t]he purpose of the bill is hopefully to save money and try to keep rates as low as possible." *Id.* Thus, the legislative history indicates that the broad purpose of the 1979 bill was to streamline the administration of the workers' compensation system and that the specific purpose of the section on changing physicians was to prevent doctor shopping. Based on that understanding, we conclude that the director's interpretation of the statute achieves what the legislature intended to achieve.

The director's policy to consult either the Medical Director's guidelines or, as needed, the Medical Director allows the director to act efficiently. Essentially, the guidelines provide that, if asked about a proposed change of physician for a person whose circumstances are covered by the guidelines, the Medical Director would give the corresponding advice ("the change may be approved/disapproved"). If a

particular person's situation is not covered by the guidelines, then the director must get advice directly from the Medical Director or another physician. The director's policy of consulting the Medical Director's guidelines for advice when feasible allows the director to comply with the statutory requirement to get advice from a physician about a proposed change of attending physician and to do it efficiently, which is consistent with the legislature's intent in enacting Senate Bill 48.

Ultimately, the director must decide whether to approve a proposed change in attending physician. The advice from the guidelines does not dictate the director's decision. Because substantial evidence in the record supports the director's conclusion that claimant's change in physician was justified, we affirm the director's order approving the change.

Affirmed.