Argued and submitted September 12, 1997; resubmitted En Banc June 10, affirmed September 30, 1998

In the Matter of the Medical Services Dispute.

SAIF CORPORATION
and Northwest Hills Baptist Church,
*Petitioners,*

*v.*

Jack H. GLUBRECHT,
*Respondent.*

(H96-075; CA A95334)

967 P2d 490

Michael O. Whitty argued the cause and filed the brief for petitioners.

Sean A. Lyell argued the cause for respondent. With him on the brief was Bennett Hartman Reynolds & Wiser.

HASELTON, J.

**HASELTON, J.**

Employer and insurer seek review of an order of the Workers' Compensation Division of the Department of Consumer and Business Services (DCBS) determining that home remodeling services are reimbursable medical services under ORS 656.245(1) and were reasonable and necessary in this case. We agree that, in appropriate circumstances, remodeling services are reimbursable medical services and conclude that substantial evidence in this record supports the reasonableness of, and necessity for, those services. Consequently, we affirm.

The following facts are undisputed: Due to a 1982 on-the-job injury, claimant is quadriplegic. In April 1983, insurer remodeled claimant's Corvallis home to accommodate his wheelchair. Contemporaneously, claimant signed an agreement that stated that if he sold his home before the expiration of five years, a certain sum would be retained from the sale to pay for the structural modifications to his new home. In 1986, claimant bought property in West Linn and approached insurer with a request to renegotiate that agreement. Insurer responded that it would not renegotiate and would adhere to the agreement. In June of 1988, after the five-year period had expired, claimant sold his Corvallis home and planned to move to West Linn to live nearer to his family.

However, after claimant sold his home in Corvallis, his relationship with his family members changed so that he decided not to move to West Linn. Instead, claimant purchased a lot in Corvallis on which he planned to build a home. In the meantime, claimant moved into an apartment and, eventually, into a rental house. While planning the new house, claimant asked insurer whether it would be willing to provide funds for the wheelchair-accessible features of his new house, and insurer responded "in general terms" that it would be willing to do so. Claimant estimated that the cost of adding those features would be about $5,000.

Thereafter, in late 1989, claimant changed his mind about building a house in Corvallis. The terrain around the lot he had purchased was hilly and he realized that he would

not be able to independently "access" facilities and services. Consequently, in December 1989, claimant bought a house in another, flatter area of Corvallis, which is near shopping facilities and other services that claimant can "access" on his own. The house that claimant bought was not wheelchair accessible when he purchased it.

In March 1990, claimant asked insurer if it would pay to remodel his residence and make it wheelchair accessible. Claimant estimated the cost of the remodeling as $14,288. Thereafter, the parties discussed potential reimbursement for those expenses.[1] In May 1990, the contractor began remodeling the house. Upon completing the remodeling, claimant increased his request for payment from $14,288 to $24,038, to account for the additional cost of adding a master bedroom that is spacious enough to accommodate a wheelchair and specialized bed. Insurer did not respond to claimant's request. In October 1990, insurer requested review of the dispute by the Director.[2]

On behalf of the Director of DCBS, the Medical Review Unit (MRU) reviewed the case. On March 29, 1996, the MRU issued its Proposed and Final Order Concerning a Medical Services Dispute finding that the remodeling of claimant's home was a reasonable and necessary medical service and that the remodeling costs were reasonable. The

---

[1] Claimant testified that the insurer's representatives agreed to pay at least some portion of the reasonable cost of remodeling his home to make it wheelchair accessible. However, the Director rendered no findings of fact as to whether such representations were actually made.

[2] The parties to this dispute appeared before many forums from 1990 until 1996 disputing whether jurisdiction to review the compensability of medical services lay with the Hearings Division or the director. Initially, in 1990, insurer requested review of the dispute by the director, but, soon thereafter, claimant requested review by the Hearings Division. The Hearings Division denied insurer's motion to dismiss for lack of jurisdiction, concluding that it had jurisdiction to decide the dispute. The director concluded that he lacked jurisdiction and stayed the matter pending the outcome in the Hearings Division. Finally, however, after the Board reviewed the director's jurisdictional determination, Oregon Laws 1995, chapter 332, sections 25, 27, 41 (codified at ORS 656.245(6), ORS 656.260(14), and ORS 656.327(1)(a), respectively) were enacted; they provide that the director has exclusive jurisdiction over medical services disputes. Thereafter, the director determined that the dispute was within his jurisdiction, and in March 1996, the Medical Review Unit made a decision on the merits on the basis of a file and evidence that had been developed years before.

MRU ordered insurer to reimburse claimant $24,038 for remodeling costs incurred.

Petitioners thereafter requested a contested case hearing. The parties submitted the case on the record and written argument. As is relevant to our review, petitioners argued that: (1) home remodeling costs are not compensable medical services under ORS 656.245(1)(b); (2) the MRU's conclusion that home remodeling costs were "reasonable and necessary" is not supported by substantial evidence in the record; and (3) the MRU's conclusion conflicted with the Department's own administrative rules regarding medical services.

The ALJ affirmed the order of the MRU. The ALJ found, relying on *Stoddard v. Credit Thrift Corp.*, 103 Or App 283, 796 P2d 1249 (1990), that, in appropriate circumstances, remodeling can be a medical service:

"[T]he remodeling services here are * * * of precisely the same quality and character as the services deemed to be compensable services in the current statute, specifically 'crutches,' 'prosthetic appliances,' 'braces' and 'supports.' As noted by WCD and as explained in its order, the home remodeling services will facilitate claimant's physical function in a manner consistent with other prosthetic devices. Consequently, I conclude that remodeling services may be compensable services, if the evidence establishes that the services are reasonable and necessary because they will enable claimant to become more independent and self-sufficient, consistent with the policy set forth in ORS 656.012(1)(c)."

The ALJ also concluded that the remodeling services were reasonable and necessary:

"At the previous hearing before the board, claimant's wife testified that the layout of the new home allowed her husband the opportunity to have contact with the outside world and to interact with others when he was confined to his bed for lengthy periods of up to seven weeks or more. In addition, claimant testified that the move to the new house along with the specific modifications allow him to be more independent and self-sufficient within and outside the home. * * * Moreover, Dr. Moore, who is an expert in physical medicine and rehabilitation, reviewed claimant's case

at the director's request. He analyzed every modification and stated without qualification that 'the remodeling as performed was medically necessary, reasonable and appropriate.' There is no persuasive countervailing evidence or contrary opinion in the record."

Finally, the ALJ concluded that the administrative rules petitioners invoked were inapposite.

As a preliminary matter, before we consider the merits, we must address a jurisdictional issue concerning the time within which a petition for review must be filed. The following facts are pertinent to this preliminary issue: The ALJ issued and served its "Proposed and Final Contested Case Hearing Order" on August 28, 1996. The order became final on September 27, 1996. DCBS did not re-serve the parties with the final order. Petitioners filed their petition for judicial review on November 20, 1996.

Petitioners thus petitioned for review more than 60 days after the ALJ issued and served the "Proposed and Final" order that is the object of our review but within 60 days of when that order did, in fact, become final. That timing raises jurisdictional questions which, in turn, implicate the interplay of four statutes. First, ORS 183.480(3) provides:

"No action or suit shall be maintained as to the validity of any agency order except a final order as provided in this section and ORS 183.482 * * *[.]"

Second, ORS 183.464 provides:

"(1)   Except as otherwise provided * * *, unless a hearings officer is authorized or required by law or agency rule to issue a final order, the hearings officer shall prepare and serve on the agency and all parties to a contested case hearing a proposed order, including recommended findings of fact and conclusions of law. *The proposed order shall become final after the 30th day following the date of service of the proposed order, unless the agency within that period issues an amended order.*

"(2)   An agency may by rule specify a period of time after which a proposed order will become final that is different from that specified in subsection (1) of this section." (Emphasis added.)

Third, ORS 183.482(1) provides, in part:

> "Jurisdiction for judicial review of contested cases is conferred upon the Court of Appeals. Proceedings for review shall be instituted by filing a petition in the Court of Appeals. *The petition shall be filed within 60 days only following the date the order upon which the petition is based is served* unless otherwise provided by statute. If a petition for rehearing has been filed, then the petition for review shall be filed within 60 days only following the date the order denying the petition for rehearing is served. * * * Date of service shall be the date on which the agency delivered or mailed its order in accordance with ORS 183.470." (Emphasis added.)

Fourth, ORS 183.470 provides, in part:

> "In a contested case:
>
> "* * * * *
>
> "(3)   The agency shall notify the parties to a proceeding of a final order by delivering or mailing a copy of the order and any accompanying findings and conclusions to each party or, if applicable, the party's attorney of record."

Those statutes are not, in truth, completely consistent. As applied to these circumstances, they could plausibly support any of three divergent, and not entirely satisfying, results.

Under the first construction, where a "proposed and final" order becomes final by virtue of ORS 183.464(1), the petition for judical review would have to be filed no later than 60 days after the service of the "proposed and final" order. That construction would comport with the general, albeit not conclusive, assumption in ORS 183.482(1) that filing is to occur within 60 days of the service of the order. Under such a construction, we would lack jurisdiction because petitioners here filed more than 60 days after they were served with the "proposed and final" order. *See Ososke v. DMV*, 320 Or 657, 661, 891 P2d 633 (1995) (timely filing of the petition for review under ORS 183.482(1) is jurisdictional).

One difficulty with that construction is practical. It would mean that, in effect, those served with a proposed order have 30—not 60—days within which to file a petition

for review. That is so because a petition may be filed as to final orders only, and the proposed orders become final after 30 days, leaving only 30 days for the filing of a petition for judicial review. Moreover, as petitioners argue, such an interpretation of ORS 183.482(1)

> "makes ORS 183.464(2) meaningless. That provision allows the Department to specify a period of time after which a proposed order will become final that is different from the 30 day period provided in ORS 183.464(1). If the Department were to specify a period of 61 days, an appeal could never be taken. Appeal cannot be taken from a proposed order, and the 60 days from service under ORS 183.482(1) would have expired before the proposed order became final."

We agree with petitioners that a construction of ORS 183.482(1) that, read together with ORS 183.464(2), would allow an agency to preclude review of certain orders, is unworkable and could not have been what the legislature intended.

Under the second construction, the combination of ORS 183.482(1) and ORS 183.470(3) would require that the "proposed and final" order be *re-served* after that order became final by operation of law, ORS 183.464(1), and that the time for filing the petition for review would not begin to run until that reservice occurred. However, none of the statutes refers to, much less requires, reservice, and such a requirement would detract from the principle of finality expressed in, and effected by, ORS 183.464(1).

Under the third and final construction, the 60-day time for filing the petition for review would run from the date that the "proposed and final" order became final—that is, "the 30th day following the date of service of the proposed order," ORS 183.464(1)—without any requirement of reservice. Although that construction does not square with the general assumption in ORS 183.482(1) that *service* of the order is the trigger for the filing of the petition, ORS 183.482(1) itself expressly contemplates exceptions to that general principle: "unless otherwise provided by statute."

Because of the special circumstances pertaining to the finality of orders issued pursuant to ORS 183.464(1), the operation of that statute plausibly implicates the "unless otherwise provided by statute" exception.

■ As noted, each of the foregoing constructions has its strengths and weaknesses. None is entirely satisfactory because each requires some generation of judicial "gloss." However, on balance, the third best reconciles tensions in the statutory text and comports most closely with practical reality and common sense. We adopt that construction. Because the petition in this case was filed within 60 days of when the "final and proposed" order became final under ORS 183.464(1), the petition was timely, and we have jurisdiction. We proceed to the merits.

Petitioners raise three assignments of error. In their first assignment, petitioners argue that the ALJ erred in determining that remodeling services are compensable as medical services under ORS 656.245(1)(b). Petitioners contend that, because home remodeling is not a listed medical service under ORS 656.245(1)(b), application of the principle *ejusdem generis* is the appropriate textual aid. Under that rule of construction, petitioners argue that remodeling services are not of the same kind or class of medical service as the listed services in ORS 656.245(1)(b) because they are not commonly provided by medical practitioners, as many of the other medical services are, and because claimant's physician did not prescribe or provide the remodeling services himself.

Claimant responds that remodeling services are compensable medical services and that our decision in *Stoddard*, 103 Or App 283, implicitly so held. Even without that precedent, claimant argues that the text and context of the statute establish that remodeling services are compensable as either "other related services" or "prosthetic appliances, braces [or] supports." That is true, claimant argues, because wheelchairs, which, he asserts, are prosthetic devices, are functionally indistinguishable from the structural modifications that make the use of the wheelchair possible. Thus,

structural modifications to claimant's home are either prosthetic appliances, or, under the principle of *ejusdem generis*, of a like kind or class.[3]

■      Employers have a duty to provide medical services for compensable conditions caused in material part by the injury for the life of an injured worker. *See* ORS 656.245(1)(a), (b). To determine whether remodeling services are compensable medical services, we must engage in statutory construction. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We begin with the text and context of the statute. *Id*. ORS 656.245(1)(b) provides:

> "Compensable medical services shall include medical, surgical, hospital, nursing, ambulances and other related services, and drugs, medicine, crutches *and prosthetic appliances, braces and supports* and where necessary physical restorative services." (Emphasis added.)

Petitioners do not deny that a wheelchair is a prosthetic appliance. Structural modifications made to a home to accommodate the wheelchair have the function of facilitating the use of the wheelchair. Indeed, the structural modifications are an extension of the wheelchair itself, without which the wheelchair could not serve as the tool it is intended to serve. Without the structural modifications, a wheelchair could not assist a person without the use of his or her legs to be independently mobile in the home.

One purpose of the Workers' Compensation Act is to "restore the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable." ORS 656.012(2)(c). The function of a wheelchair, and of the necessary accompanying structural modifications to the claimant's home, is to promote self-sufficiency and to allow the individual independently to gain access to, and use, the rooms in his or her home. The text

---

[3] Although claimant did argue before the MRU that insurer is estopped from denying compensability of the remodeling services due to insurer's alleged agreement to pay the reasonable expenses of such remodeling in early 1990, claimant did not renew that argument on review to the ALJ. In any event, as previously noted, neither the MRU nor the ALJ made findings of fact as to whether insurer did make such representations to claimant.

and context of ORS 656.245(1)(b) reveal the legislature's intent to compensate, as "prosthetic appliances, braces and supports," a quadriplegic claimant for the expenses of remodeling a house to accommodate a wheelchair and other quadriplegia-related devices.[4]

Our conclusion is consistent with our holding in *Stoddard*, 103 Or App 283. There, as here, the claimant was injured on the job and rendered quadriplegic. The claimant was granted permanent total disability and had attendants to care for him 24 hours a day. He paid to have his house remodeled. However, after the claimant was divorced, he could no longer afford to live in his home. He sold it and moved to another house. The claimant requested that the employer pay for structural modifications to his new house to accommodate his wheelchair (*e.g.*, widening doorways, building ramps) and to pay for other nonremodeling-related accommodations (*e.g.*, a commode shower, a trapeze sling). The employer denied the request.

The referee determined that the remodeling work was not a compensable medical service under ORS 656.245(1). However, the referee held that the commode shower and other particular items were compensable. On review, the Board agreed with the referee that the particular nonstructural-modification items requested were compensable. The Board did not reach the issue of whether remodeling services were a compensable medical service under ORS 656.245(1), because it concluded that, in any event, even if the services were generally compensable, they were not reasonable and necessary in that case. The Board reasoned

---

[4] Petitioners' references to *Baar v. Fairview Training Center*, 139 Or App 196, 911 P2d 1232, *rev den* 323 Or 690 (1996), and *Lorenzen v. SAIF*, 79 Or App 751, 719 P2d 1336 (1986), are unavailing. In *Baar*, we held that housekeeping services are not compensable as "other related services" because they are not, under the rule of *ejusdem generis*, of the same general class as "medical, surgical, hospital, nursing, [or] ambulance[ ]" services. 139 Or App at 205. For the same reason, in *Lorenzen*, we held that child care services are not compensable as "other related services." Assuming without deciding that, as in *Baar* and *Lorenzen*, structural modifications are not compensable as "medical, surgical, hospital, nursing, ambulances and *other related services*," they are compensable, as we describe above, as being within the general rubric of "prosthetic appliances, braces and supports." (Emphasis added.) *See* ORS 656.245(1)(b).

that, because the claimant would not be able to perform common household tasks independently even with the remodeling, the remodeling was not reasonable and necessary.

We reversed the Board's determination that the remodeling services were not compensable. We held that the Board used an incorrect standard to determine whether the remodeling services were reasonable and necessary—*i.e.*, the fact that claimant would continue to need the services of caregivers was not dispositive of the reasonableness and necessity of the requested changes. We further held:

> "[T]he Board's denial of claimant's request for the widening of his bathroom door to permit his entering without assistance appears to be inconsistent with its allowing reimbursement for the commode shower, which can only be used in the bathroom and which he can use only with assistance. On reconsideration, the Board should explain that apparent inconsistency." *Stoddard*, 103 Or App at 286-87.

In remanding to the Board to reconsider whether the remodeling services were reasonable and necessary, we did not address the issue of whether, in fact, remodeling services are compensable "medical services" under ORS 656.245(1). Whether or not we "implicitly," as claimant argues, held such services to be compensable in *Stoddard*, we hold here that, in appropriate circumstances, remodeling services are compensable medical services.[5]

---

[5] Insurer argues that

"[t]he rationale used by the Department here, that wheelchair ramps, widened doorways and modified bathrooms are necessitated by the use of the wheelchair, arguably a type of prosthetic appliance, could be used as well to require the employer and insurer to provide the floor upon which the wheelchair rolls, and the foundation that supports the floor."

However, our holding does not extend so far. The modifications claimant made to his house and for which he requested payment from insurer are all uniquely attributable to claimant's condition and his use of a wheelchair. A floor and foundation are common components of all houses. On the other hand, widened doorways and ramps leading from all exits of a home are not considered necessary and common for all houses. They are only necessary for claimant by virtue of claimant's condition and his use of a wheelchair. *Cf. Polk County Bd. of Comm'rs v. Varnado*, 576 So 2d 833, 838 (Fla App 1 Dist 1991) ("The law does not require the [employer/carrier] to be responsible for all expenses of operation, although costs uniquely attributable to the provision of a facility or service which is necessitated by an accident and found to be medically necessary, may be awarded. Absent unique circumstances, however, the carrier is not required to bear the costs of normal living expenses not necessitated by the accident.") (citation omitted).

In their second assignment of error, petitioners argue that the ALJ erred in concluding that the remodeling services for which claimant seeks to be reimbursed were reasonable and necessary. *See Wait v. Montgomery Ward, Inc.*, 10 Or App 333, 338, 499 P2d 1340 (1972) (a claimant who has been awarded permanent disability is entitled to compensation for "medical expenses necessarily and reasonably incurred in the continued treatment of the injury"). More particularly, petitioners contend that once a claimant is provided with remodeling services, the claimant must stay in that home or present compelling reasons why he or she needs to move to another home. Petitioners claim that claimant did not present a valid reason for moving from his original home in Corvallis, and, thus, the evidence does not support the conclusion that claimant's move was necessary.

Claimant responds on two levels. First, he argues that the evidence supports the ALJ's conclusion that his need for remodeling services was necessary because it shows that, when claimant requested the remodeling services, he no longer lived in a wheelchair-accessible home. Second, claimant contends that, by the time he had decided not to move to West Linn to be near his family, he had already sold his remodeled Corvallis home. Therefore, the services were necessary because he could not go back to the remodeled Corvallis home.[6]

We agree with claimant that the ALJ's determination that the remodeling expenses incurred by claimant were reasonable and necessary is supported by substantial evidence in the record. *See* ORS 183.482(8)(c). In his unmodified new residence in Corvallis, claimant had access to two rooms only, the kitchen and the living room. He had no access to the bathroom or bedrooms. Further, only one door was wide enough to permit his entry into the house, and, then, only due to a temporary ramp that required him to back into the kitchen. In addition, Dr. Moore, a physical medicine and rehabilitation specialist who reviewed claimant's case at the

---

[6] Claimant asserts on review that insurer is estopped from contesting that the remodel to claimant's home was reasonable and necessary because insurer allegedly represented to claimant that it would reimburse claimant for the reasonable cost of the remodel. As noted previously, however, neither the director nor the ALJ made findings of fact as to whether the insurer made such representations.

request of the MRU, concluded that every modification claimant requested was "medically necessary, reasonable and appropriate" and allowed claimant to become more self-sufficient. *See* ORS 656.012(2)(c). Conversely, petitioners identified no contrary evidence. We thus reject petitioners' second assignment.

In their third assignment of error, petitioners assert that the ALJ erred in failing to apply two administrative rules. Petitioners generally contend, quoting OAR 436-010-0230(1), that " 'medical services * * * which violate these rules * * * are not reimbursable.' " They argue, particularly, that the ALJ failed to apply OAR 436-010-0210(7) and OAR 436-010-0230(3), and that a proper application of either of those rules compelled a conclusion that the remodeling expenses incurred by claimant were not compensable.

OAR 436-010-0210(7) provides:

"Attending physicians may *prescribe treatment* to be carried out by persons licensed to provide a medical service or by persons not licensed to provide a medical service. Those persons not licensed to treat independently or not licensed to provide a medical service, may only provide *treatment prescribed by the attending physician which is rendered under the physician's direct control and supervision*." (Emphasis added.)

OAR 436-010-0230(3) provides, in part:

"Ancillary services *including, but not limited to, physical therapy or occupational therapy* by a medical service provider other than the attending physician shall not be reimbursed unless carried out under a *written treatment plan* prescribed prior to the commencement of treatment and approved by the attending physician within seven days of the beginning of treatment." (Emphasis added.)

With respect to those rules, the ALJ concluded:

"[T]hose provisions * * * do not apply to services such as home remodeling but rather to ancillary services such as physical therapy, which must be carried out pursuant to a written treatment plan prescribed by the attending physician, or other services, such as massage therapy which must be provided under the direct control and supervision of the attending physician. Given the nature of the home

remodeling services, it is ludicrous to even suggest that this is the type of service which must be prescribed by the attending physician or done under the attending physician's direction and control."

On judicial review, petitioners argue that: (1) remodeling services are "treatment" and, thus, must be prescribed by a physician and directly controlled and supervised by a physician; and (2) remodeling services are "ancillary services" that must be carried out only under a treatment plan. Because the remodeling services here were not prescribed by a physician, were not subject to a physician's direct control, and were not rendered pursuant to a treatment plan, petitioners assert that they are not reimbursable.

■ If, in reviewing an administrative agency's interpretation of its own rule, we find the agency's interpretation to be "plausible" and not inconsistent with "the wording of the rule itself, or with the rule's context, or with any other source of law," we must uphold the agency's interpretation. *Don't Waste Oregon Comm. v. Energy Facility Siting Council*, 320 Or 132, 142, 881 P2d 119 (1994). *See, e.g., Safeway Stores, Inc. v. Cornell*, 148 Or App 107, 111, 939 P2d 99 (1997) (applying *Don't Waste Oregon* to ALJ's interpretation of an administrative rule in the context of a medical services dispute). Petitioners do not argue that the agency's interpretation of its rules is inconsistent with another source of law, but, rather, argue, in essence, that its interpretation is inconsistent with the rule itself or is not plausible.

■ OAR 436-010-0210(7) provides that treatment prescribed by a physician may be performed by someone not licensed to provide a medical service if the physician has direct control and supervision over the provision of that treatment. The ALJ concluded that the rule applies to such treatment as massage therapy and not to services such as remodeling. Petitioners argue that the rule applies to "any medical service 'carried out by persons * * * not licensed to provide a medical service.'" However, the language of the rule applies only to "treatment" prescribed by a physician, and petitioners have identified no definition of "treatment" that includes every "medical service." If all medical services were, in fact, treatment, then doctors would have to *prescribe*

patients' transportation to the doctor's office and would even have to *supervise* that transportation. *See Safeway Stores,* 148 Or App at 110 (cost of transportation is compensable as a medical service). The rule requiring doctors to prescribe treatment and control and supervise the provision of that treatment was clearly not written to apply to transportation to appointments, nor was it written to apply to remodeling services. The agency's interpretation of its own rule is plausible.

■ The ALJ's interpretation of OAR 436-010-0230(3) is also plausible and consistent with the language of the rule. That rule requires that ancillary services be carried out in accordance with a treatment plan. However, the rule does not define "ancillary services" except to say that such services "includ[e], but [are] not limited to, physical therapy or occupational therapy by a medical service provider other than the attending physician." The definition does *not* say that all services provided by medical service providers who are not attending physicians are necessarily "ancillary services." *See also* OAR 436-010-0230(3)(b) (clarifying that *particular categories* of medical services are subject to subsection (a) regarding ancillary services).

Under the principle of *ejusdem generis,*

> "when the legislature chooses to state both a general standard and a list of specifics, the specifics do more than place their particular subjects beyond the dispute; they also refer the scope of the general standard to matters of the same kind * * *." *Bellikka v. Green,* 306 Or 630, 636, 762 P2d 997 (1988).

The focus of OAR 436-010-0230(3) is "treatment." Viewed in that context, the common element of "physical therapy" and "occupational therapy," for purposes of an *ejusdem generis* analysis, is that both contemplate an ongoing course of personal interaction between the injured employee and the care provider, designed to directly address and ameliorate the physical effects of the claimant's injury. That is, both involve a course of personal "treatment," with success being measured against a "treatment plan." Conversely, home remodeling does not partake of that common, ongoing treatment element. Remodeling is directed to a building, not a person; it

involves structural modification, not physical treatment. Accordingly, we affirm the agency's determination that home remodeling is not an "ancillary service" within the meaning of OAR 436-010-0230(3).

Affirmed.