Argued and submitted December 28, 2006, reversed and remanded for additional findings August 15, 2007

SEDGWICK CLAIMS MANAGEMENT SERVICES,
*Petitioner,*

*v.*

Michael G. JONES
and Workers' Compensation Division,
*Respondents.*

Workers' Compensation Division
H05008; A129373

166 P3d 547

Michael G. Bostwick argued the cause and filed the briefs for petitioner.

Robert K. Udziela argued the cause and filed the brief for respondent Michael G. Jones.

Richard Wasserman waived appearance for respondent Workers Compensation Division.

Before Edmonds, Presiding Judge,* and Brewer, Chief Judge,** and Wollheim, Judge.

WOLLHEIM, J.

---

* Edmonds, P. J., *vice* Linder, P. J.
** Brewer, C. J., *vice* Richardson, S. J.

## WOLLHEIM, J.

Sedgwick Claims Management Services petitions for judicial review of a final order of the Workers' Compensation Division that held that Sedgwick was responsible for the purchase of a new wheelchair-accessible modified van as a reasonable and necessary medical service under ORS 656.245. We review for errors of law, ORS 183.482(8)(a). Because, as Sedgwick argues, the division did not consider its administrative rules in ordering Sedgwick to provide the van, we reverse and remand.

The facts are undisputed. In 1978, claimant, while working for a noncomplying employer, was injured in a logging accident that resulted in a T9 compression fracture and paraplegia. As a result of his injuries, claimant is confined to a wheelchair. Consistent with the Workers' Compensation Law at the time of claimant's injury, SAIF was assigned to process this claim for the noncomplying employer. A 1987 determination order declared claimant to be totally and permanently disabled.

In 1986, claimant's then-attending physician wrote a prescription for a modified vehicle so that claimant could drive independently. After initially denying the request, SAIF rescinded its denial by stipulation. SAIF then issued a partial denial, arguing that it was not responsible for specific equipment that the attending physician prescribed. In 1988, a referee issued an opinion and order setting aside SAIF's partial denial and ordering SAIF to purchase a new wheelchair-accessible modified van for claimant as prescribed by his then-attending physician. The referee determined that "[t]he van * * * is, under ORS 656.245, a type of 'prosthetic appliance[.' "] SAIF did not request board review, and the opinion and order became final. SAIF eventually purchased a new 1989 van for claimant.

In 2003, claimant informed Sedgwick—the current claim processor for the noncomplying employer—that he was having problems with his 14-year-old van. Specifically, the transmission was faulty such that the van would not stay in park, despite having been removed and serviced three times by a transmission mechanic. In response, Sedgwick advised

claimant that it would "make necessary modifications to a vehicle that *[claimant] purchase[s]*." (Emphasis added.)

In early 2004, claimant's attending physician, Dr. Hitzman, prescribed a new van, along with a list of accessories and modifications, to replace claimant's malfunctioning 1989 van. Claimant's physician indicated that the wheelchair-accessible modified van was medically necessary due to claimant's "[l]ack of mobility and/or extremity function with need for transportation especially during winter season." Claimant's physician indicated that the van would assist claimant in achieving "[i]ndependence in driving" and serve as an "extension of [claimant's] wheelchair mobility." The prescription also referenced the fact that, in 1989, SAIF had purchased a new wheelchair-accessible modified van and that it had been previously determined that the van was a type of prosthetic appliance for claimant.

Despite the precedent of the 1988 opinion and order and the 2004 prescription, Sedgwick did not purchase a replacement van. Claimant requested administrative review by the Medical Review Unit (MRU). Sedgwick conceded that claimant needed a modified van and that it was responsible for van modifications, but Sedgwick did not believe that it was required to purchase a new van. The MRU, in an administrative order, concluded that a "modified wheelchair accessible van is a reasonable and appropriate compensable medical service." Sedgwick was ordered to replace claimant's malfunctioning van with a new wheelchair-accessible modified van, as prescribed by claimant's attending physician.

Sedgwick appealed the administrative order and requested a contested case hearing before an administrative law judge (ALJ).[1] The ALJ issued a proposed order, which became the division's final order when neither party filed exceptions. The order concluded that "[t]he administrative order correctly determined that the insurer is required to pay

---

[1] The contested case hearing here was not a typical contested case hearing under ORS chapter 183. For example, the administrative order under review may be modified only if it is not supported by substantial evidence in the record, and no new medical evidence can be admitted at the contested case hearing. ORS 656.327(2).

for a new, wheelchair-accessible van with modifications as prescribed by [claimant's physician]."

Sedgwick petitions for judicial review and advances two assignments of error. First, Sedgwick argues that the division erred when it concluded that the purchase of a new modified wheelchair-accessible van was a medical service pursuant to ORS 656.245. Second, Sedgwick argues that the division erred in failing to consider its own administrative rules in concluding that a new modified van was reasonable and necessary. Sedgwick asserts that OAR 436-010-0230(1) and (10), when properly applied to this case, proscribe such a conclusion.[2]

Before we address the assignments of error, we pause to discuss the procedural posture of this case. As an initial matter, claimant had the burden of proving that he is entitled to the requested medical service under ORS 656.245. In this case, claimant met his burden of proof before the MRU. By challenging the administrative order, Sedgwick bore the burden of proving that the administrative order was not supported by substantial evidence in the record. Before us, Sedgwick argues that the division erred, as a matter of law, in requiring Sedgwick to purchase a new modified van. To the extent that Sedgwick is arguing that ORS 656.245 does not authorize the purchase of a modified van for this claimant, we agree that we review that question as a matter of law. However, to the extent that Sedgwick is arguing that ORS 656.245 does not authorize the purchase of a *new* modified van, we disagree that we review the "newness" question as a matter of law. Rather, whether claimant is entitled to a repaired, used, or new modified van is a question of fact, which we review for substantial evidence.

The only evidence in the record below was that claimant's 1989 van could not be repaired. His attending physician prescribed a *new* modified wheelchair-accessible van. Sedgwick presented no evidence (1) that the 1989 van could be repaired; (2) that a different used van would be adequate; (3) of the price of a different used van; or (4) that the price of a different, but adequate, new van would be less than the

---

[2] We discuss these administrative rules later in this opinion.

price of the van prescribed by the attending physician. Although Sedgwick made those arguments, it presented no evidence to support them. There is no evidence in this record that a van other than the replacement van prescribed by the attending physician would suffice. Based on that understanding, we turn to the first assignment of error.

## IS A NEW MODIFIED VAN A MEDICAL SERVICE UNDER ORS 656.245?

■   The question is whether, as a matter of law, a wheelchair-accessible modified van can be a compensable medical service as defined by ORS 656.245. Accordingly, we begin our analysis with the text and context of ORS 656.245 and apply the familiar methodology specified in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). If the text and context are unambiguous, our inquiry ends and we need not resort to legislative history or maxims of statutory construction. *Id.* at 610-12.

We start with ORS 656.245(1), which provides, in part:

"(a)   For every compensable injury, the insurer * * * shall cause to be provided *medical services for conditions caused in material part by the injury* for such period as the nature of the injury or the process of the recovery requires * * * *including such medical services as may be required after a determination of permanent disability.* * * *

"(b)   Compensable medical services *shall include* medical, surgical, hospital, nursing, ambulances and other related services, and drugs, medicine, crutches and prosthetic appliances, braces and supports and where necessary physical restorative services. *The duty to provide such medical services continues for the life of the worker.*"

(Emphasis added.) ORS 656.245 provides a nonexhaustive list of the different types of compensable medical services contemplated by the legislature, an interpretation that is supported by the use of the phrase "shall include." As such, the statute does not enumerate every medical service contemplated by the legislature; rather, it provides examples to illustrate the kinds of services that are compensable under the statute.

Sedgwick concedes that a wheelchair is a prosthetic device. With that in mind, we next must determine whether a van, modified to accommodate an injured worker's wheelchair, can also be a medical service under the statute. To help us with that task, we turn to *SAIF v. Glubrecht*, 156 Or App 339, 967 P2d 490 (1998), in which we concluded that home remodeling services to accommodate a wheelchair may, in certain circumstances, be a compensable medical service. *See Waite v. Dempsey*, 203 Or App 136, 141, 125 P3d 788 (2005) (holding that prior Court of Appeals construction of a statute is always relevant to first-level *PGE* analysis by the Court of Appeals).

In *Glubrecht*, a quadriplegic workers' compensation claimant sought reimbursement for remodeling services to his house so that he could ambulate independently within his home. 156 Or App at 348. Both the MRU and the division in *Glubrecht* concluded that the remodeling of the claimant's home to accommodate his wheelchair was a reasonable and necessary medical service under ORS 656.245, and that the insurer was responsible for the remodeling costs. The insurer challenged the validity of that ruling. This court, sitting en banc, concluded that home remodeling services were "compensable medical services" within the meaning of the Workers' Compensation Law. Most notably, we wrote:

> "One purpose of the Workers' Compensation Act is to 'restore the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable.'[3] * * * The function of a wheelchair, and of the necessary accompanying structural modifications to the claimant's home, is to promote self-sufficiency and to allow the individual independently to gain access to, and use, the rooms in his or her home. The text and context of ORS 656.245(1)(b) reveal the legislature's intent to compensate, as 'prosthetic appliances, braces and supports,' a quadriplegic claimant for the expenses of remodeling a house to accommodate a wheelchair and other quadriplegia-related devices."

---

[3] ORS 656.012(2)(c) provides that one of the objectives of the Workers' Compensation Law is "[t]o restore the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable[.]"

*Glubrecht*, 156 Or App at 348-49.

Our reasoning in *Glubrecht* informs our present task. Here, the purpose of vehicular modifications is to promote self-sufficiency and to allow an injured worker the ability to travel independently longer distances than he could otherwise accomplish using only a wheelchair. This record establishes that the only type of motor vehicle that can accommodate claimant's paraplegia is a modified van. Thus, not only are van modifications uniquely attributable to an injured worker's compensable injury and the use of a wheelchair, but so too is the van itself. The van is a necessary extension of claimant's wheelchair—a prosthetic device—without which, claimant's ability to be self-sufficient outside the home would be severely limited, and so, like the home remodeling services in *Glubrecht*, the van itself is a compensable medical service.

Sedgwick, however, argues that only the modifications to a van are compensable medical services. Sedgwick relies on the following footnote in *Glubrecht*:

> "Insurer argues that
>
> " '[t]he rationale used by the Department here, that wheelchair ramps, widened doorways and modified bathrooms are necessitated by the use of the wheelchair, arguably a type of prosthetic appliance, could be used as well to require the employer and the insurer to provide the floor upon which the wheelchair rolls, and the foundation that supports the floor.'
>
> "However, our holding does not extend so far. The modifications claimant made to his house and for which he requested payment from insurer are all uniquely attributable to claimant's condition and his use of a wheelchair. A floor and foundation are common components of all houses. On the other hand, widened doorways and ramps leading from all exits of a home are not considered necessary and common for all houses. They are only necessary for claimant by virtue of claimant's condition and his use of a wheelchair."

*Id.* at 350 n 5 (citation omitted). Sedgwick asserts that, when the final order determined that a new wheelchair-accessible modified van was a compensable medical service, the final

order essentially obligated Sedgwick to not only pay for the "remodeling services," but to also "buy the house" for claimant. While Sedgwick's reliance on this footnote is understandable, Sedgwick reads too much into it.

A footnote is just that, a footnote; it is not a holding. Further, the issue in *Glubrecht* was the remodeling of the claimant's existing home. The claimant did not request that the insurer pay for a new residence. The footnote in *Glubrecht* is *dictum*; it does not control our decision in claimant's request for a new modified van.

We hold that the text and context of ORS 656.245(1)(b) reveal the legislature's intent to include in the definition of compensable medical services under ORS 646.245 a van modified to accommodate claimant's wheelchair and other paraplegia-related devices. That conclusion is consistent with our decision in *Glubrecht*.[4]

## DID THE DIVISION CONSIDER OAR 436-010-0230?

We next turn to Sedgwick's second assignment of error, that the division erred in "failing to consider its own administrative rules in concluding that a new modified van was a compensable medical service." Sedgwick asserts that, if the division had properly considered its administrative rules, it would have determined that a new van for claimant was not reasonable and necessary. According to Sedgwick, OAR 436-010-0230(1) limits medical services to those services that are directly related to the compensable injury and the process of recovery. OAR 436-010-0230(1) provides:

> "Medical services provided to the injured worker shall not be more than the nature of the compensable injury or the process the recovery requires. Services which are unnecessary or inappropriate according to accepted professional standards are not reimbursable."

---

[4] Claimant argues that, under the "law of the case" principle, Sedgwick is precluded from relitigating whether claimant is entitled to a new modified van, relying on *Kuhn v. SAIF,* 73 Or App 768, 772, 700 P2d 253 (1985). We decline to apply that doctrine here. ORS 656.245 has been amended since we decided *Kuhn,* and those amendments provide for a different method of reviewing claims for medical services.

Sedgwick argues that the "necessary" and "appropriate" standards in OAR 436-010-0230(1) are further refined by OAR 436-010-0230(10), which provides:

> "Articles including but not limited to beds, hot tubs, chairs, Jacuzzis, and gravity traction devices are not compensable unless a need is clearly justified by a report which establishes that the 'nature of the injury or the process of recovery requires' the item be furnished. The report must specifically set forth why the worker requires an item not usually considered necessary in the great majority of workers with similar impairments. * * *"

According to Sedgwick, wheelchair-accessible modified vans are akin to "beds, hot tubs, chairs, Jacuzzis, and gravity traction devices," which it does not have to provide for claimant "unless a need is clearly justified by a report" that, among other things, sets forth why claimant requires a van when it is "not usually considered necessary in the great majority of workers with similar impairments." Sedgwick also argues that the division "failed to take into account whether or not there was a less costly alternative than the purchase of a new van."

Sedgwick advances two different arguments. As a preliminary matter, it argues that the division, by ordering it to purchase a *new* modified van for claimant, exceeded its own limitation on compensable medical services inherent in OAR 436-010-0230(1). Further, Sedgwick asserts that, if it must provide claimant with a modified van, neither the division nor claimant supplied sufficient justification for a new van as opposed to repairing claimant's current van or purchasing a used van.

■ As previously discussed, the type of motor vehicle required—whether new or used—is a question of fact. Here, the only evidence in the record is that claimant's 14-year-old van is now inoperable because of a faulty transmission, despite being serviced three times by a transmission mechanic. Additionally, claimant's treating physician prescribed a new replacement van, with modifications to accommodate claimant's specific needs due to the compensable injury. Despite Sedgwick's protestations that the division must consider less costly alternatives to a new van, it did not

produce any evidence to support its position. Instead, Sedgwick engaged in the following colloquy with the ALJ at the contested case hearing:

"ALJ: So what is the insurer's position regarding the van itself? I understand your position about the new van.

"[Sedgwick]: I'm sorry, say that again.

"ALJ: I understand that your position is that you believe the new van is not the most cost effective alternative.

"[Sedgwick]: Correct.

"ALJ: But are you willing to pay for a van at all?

"[Sedgwick]: Well, this is our position.* * *

"* * * * *

"* * * [Claimant] has a van now. He's already got one. And the question in this case for you to decide is whether we have to provide him with a new van or modify the van he's got, or fix the van he's got, repair the van he's got.

"Had there been, for example, an opinion that * * *, if for example the van had been wrecked or the van simply no longer served the purposes and it couldn't be fixed, it couldn't be repaired, it couldn't [be] modified, there wasn't a less costly alternative, then we'd be in a different case. But we don't have that type of information here.

"So in direct answer to your question, I think we need to repair that van. And if that transmission doesn't work, we need to put a new transmission in it. I think that's what we're obligated to pay for. And if that can't be done for some reason, then we've got to make modifications to fix the van. If the van can't be fixed, then we probably have an obligation to provide a replacement van. But there's no medical support that meets the statute and administrative requirements of purchasing a new van.

"So I think that Sedgwick—again, this is a big leap of faith here, and that's assuming that this van couldn't be repaired, and I find that real hard to believe. But if it couldn't, I think Sedgwick would be obligated to go out into the used van market and find the best van available that met the physical necessities of [claimant] driving a van.

"And I believe that's what [claimant's physician] should have addressed. Instead of giving us a list of things like

chrome hubcaps, he really should have said, 'This fellow has a paraplegia, it's at T9, and this is what it does, and this is a result. This is why he needs these services. These are directly related to his injury.' But he didn't do that. And that's where I think we prevail on this matter."

Sedgwick argued that the evidence was not sufficient to support the purchase of a new modified van. The MRU's administrative order found that claimant established that he needed a new modified van. The ALJ was limited to what evidence it could consider pursuant to OAR 436-001-0225(2), which provides:

> "In medical service * * * disputes under ORS 656.245 * * *, the administrative law judge may modify the director's order[5] only if it is not supported by substantial evidence in the record or if it reflects an error of law. New medical evidence or issues may not be admitted or considered."

In issuing the order, the ALJ wrote:

> "There is no evidence that claimant owned a van at the time of his injury in 1978, and claimant *cannot now purchase any vehicle and have it properly modified. Claimant requires the specific type of vehicle and modifications prescribed by his physician.* Therefore, the insurer is required to purchase the van, as well as pay for appropriate modifications. * * * The insurer also argues that it should not be liable for the purchase of a new van because there may be less expensive alternatives. The insurer, however, has not presented evidence of less costly alternatives. * * *"

(Emphasis added; citation omitted.)

We hold that substantial evidence in the record supports the division's finding that Sedgwick must purchase a new modified van for claimant.

■ The other argument concerning Sedgwick's second assignment of error is that the final order does not reflect that the division considered its express arguments concerning OAR 436-010-0230(1) and (10). Sedgwick is correct; the

---

[5] OAR 436-010-0006 provides:

"Any orders issued by the division in carrying out the director's authority to administer, regulate, and enforce ORS Chapter 656 and the rules adopted pursuant thereto, are considered orders of the director."

division did not explicitly respond to its argument that OAR 436-010-0230(1) and (10) proscribe the purchase of a new van for claimant. Based on the record, we cannot determine whether the division considered OAR 436-010-0230(1) and (10) in making its decision, because the final order does not cite those administrative rules. Therefore, we reverse and remand to the division to expressly consider the parties' arguments under OAR 436-010-0230(1) and (10).

Reversed and remanded for additional findings.