Argued and submitted June 20, affirmed December 14, 2005

Gary R. WAITE
and Margery L. Waite,
*Appellants,*

*v.*

Elizabeth Jane DEMPSEY,
aka Bette Dempsey,
*Respondent.*

03C-20699; A125491

125 P3d 788

Kevin S. Mapes argued the cause for appellants. With him on the briefs were Amy S. Campbell and Ball Janik LLP.

Dale L. Crandall argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Ortega, Judge.

LANDAU, P. J.

---

* Brewer, C. J., *vice* Richardson, S. J.

## LANDAU, P. J.

At the heart of this case is a dispute about the validity of a judgment lien against a parcel of property. Plaintiffs are the owners of the property. Defendants have a judgment lien against it. Plaintiffs argue that, because their predecessor in interest purchased the property pursuant to a contract that had been recorded before the lien attached, the lien was extinguished by operation of law under ORS 93.645. Defendant argues that, under that statute, the interests of a purchaser under a recorded contract are superior only to liens against the seller of the property *under the contract*. Because her lien was not against the contract seller, defendant argues that the statute does not apply, and plaintiffs took the property subject to the lien. The trial court agreed with defendant. So do we. Accordingly, we affirm.

The parties have stipulated to the relevant facts. On March 6, 1999, Wigrich Farms (Wigrich) entered into a contract with a developer, Krohn Homes, Inc., to develop a parcel of property that, at that time, was owned by a third party. Under the terms of the contract, Krohn Homes, Inc., was to purchase the property and then build a commercial office building on it. When the office building was substantially complete, Krohn Homes, Inc., was to transfer title to the property to Wigrich. Wigrich paid an initial deposit of 10 percent and agreed to pay the balance upon substantial completion of the project. Robert Krohn, president of Krohn Homes, Inc., signed the agreement on behalf of Krohn Homes, Inc., but he was not personally a party to the agreement.

On April 15, 1999, Krohn Homes, Inc., was administratively dissolved. At that point, however, it had not yet purchased the property that was the subject of the development agreement with Wigrich. In spite of the dissolution of the company, however, Krohn continued to do business with Wigrich as though nothing had happened. On July 28, 1999, Krohn personally purchased the development property, and, on November 10, 1999, he and Wigrich recorded the March 16, 1999, contract between Krohn Homes, Inc., and Wigrich.

Meanwhile, defendant brought an action against both Krohn and Krohn Homes, Inc., on a matter unrelated to

the Wigrich development. On January 31, 2001, defendant obtained a judgment against Krohn in the amount of $140,000, together with interests and costs. That judgment was entered into the Marion County judgment docket on February 6, 2001.

On February 16, 2001, Wigrich assigned its interest in the development property to plaintiffs. The following week, on February 21, 2001, Krohn delivered a warranty deed to the development property to Wigrich. The deed includes a declaration that it was being given "in fulfillment of the Contract dated March 16, 1999," between Wigrich and Krohn Homes, Inc.

On October 31, 2003, defendant obtained a writ of execution on her money judgment ordering the Marion County sheriff to sell the development property that Krohn had delivered to Wigrich and that Wigrich had, in turn, delivered to plaintiffs. Plaintiffs initiated this action for declaratory and injunctive relief and obtained a stay pending the disposition of the parties' arguments as to who has priority of interest in the development property.

At trial, plaintiffs claimed the benefit of ORS 93.645, which provides:

> "The interest of the purchaser, the heirs and assigns of the purchaser, under a contract for the purchase and sale of realty, if such contract or memorandum thereof has been recorded in deed records, shall have priority over the lien of any subsequent judgment against the seller of the property, the heirs and assigns of the seller, and conveyance in fulfillment of said contract shall extinguish the lien of any such judgment."

Plaintiffs argued that, because Krohn delivered the property to Wigrich expressly "in fulfillment" of the March 16, 1999, contract between Wigrich and Krohn Homes, Inc., and because that March 16, 1999, contract had been recorded, defendant's later-acquired judgment lien was extinguished by operation of law.

Defendant argued that ORS 93.645 simply does not apply to this case. According to defendant, by its terms, the statute provides that the interest of the purchaser and its

assigns is superior to a judgment against the *seller* of the property—that is, the contract seller—and its assigns. In this case, defendant argued, the contract seller under the March 16, 1999, agreement was Krohn Homes, Inc., which never actually owned the property. The seller of the property, defendant argued, was Krohn, who was not even a party to the original March 16, 1999, contract.

The trial court agreed with defendant. The trial court examined both the text of the statute and its legislative history and concluded that both clearly indicate that ORS 93.645 applies only to extinguish a judgment lien against the original contract seller. In this case, the court noted, the judgment lien attached to property owned by Krohn, who was not the contract seller and, as a result, was not subject to the statute.

■    On appeal, plaintiffs argue that the trial court erred in so construing the statute. According to plaintiffs, ORS 93.645 was intended "to protect innocent purchasers under a land sale contract." Because it is undisputed that they are innocent purchasers, they reason, it necessarily follows that the statute applies. This is especially so, they argue, because it is also undisputed that the property was delivered to Wigrich, their predecessor in interest, "in fulfillment" of the March 16, 1999, contract.

Defendant responds that, in describing the purpose of the statute in such broad terms, plaintiffs ignore the more limited phrasing that the legislature employed: It protects innocent purchasers from judgment liens "against the seller of the property" under the terms of a land sale contract. Defendant argues that, as the trial court correctly held, "the seller" refers to the contract seller, which in this case was Krohn Homes, Inc. The judgment lien, however, was against property that was owned by Krohn personally, not Krohn Homes, Inc. Thus, she concludes, the trial court correctly determined that the statute does not apply.

Plaintiffs reply that, even though Krohn Homes, Inc., never owned the property, in fairness, we should regard Krohn as having assumed the role of "successor" to the interests of Krohn Homes, Inc., for the purposes of this transaction. Thus, they argue, when Krohn personally acquired

the development property, he did so as the successor to Krohn Homes, Inc., and when he delivered the property to plaintiffs' predecessor, he likewise did so as if he were Krohn Homes, Inc. Thus, in that sense, he was actually the contract "seller" within the meaning of ORS 93.645.

Defendant rejoins that there is a complete absence of any evidence in the record that Krohn Homes, Inc., assigned its interest in the March 16, 1999, agreement to Krohn. The fact that Krohn personally volunteered to purchase the development property, they argue, does not have the legal effect of dissolving all distinctions between actions and obligations of the corporation, on the one hand, and actions and obligations of Krohn personally, on the other.

■■ The disposition of the parties' arguments requires us to determine the intended meaning of the statute. We do so by examining the text of the statute in its context and, if necessary, its enactment history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Also relevant in our examination of the intended meaning of the statute is any prior judicial construction of the statute. *State v. Stubbs*, 193 Or App 595, 600, 91 P3d 774 (2004).

The phrasing of ORS 93.645 makes clear that it applies to protect the interests of a "purchaser" who buys realty pursuant to a land sale contract. That much is undisputed. The statute also provides that it protects the purchaser under such a contract as against any liens against the "seller" of the property, as long as the contract has been recorded. The question before us is what the statute's reference to the "seller" means. The bare phrasing suggests that the "seller" is the person selling the property under the land sale contract. We reached precisely that conclusion in *Bennett v. Boyd*, 89 Or App 659, 662 n 2, 750 P2d 531, *rev den*, 305 Or 671 (1988), when we explained that the statute "gives priority to a contract purchaser of record against a subsequent judgment *against the vendor*. It provides that any judgment lien *against the vendor* is extinguished on conveyance in fulfillment of the contract." (Emphasis in original.)

Any doubts as to that particular matter are easily resolved by reference to the legislative history. As we

explained in *Wyllie v. Von Ruden,* 76 Or App 598, 601-02, 711 P2d 137 (1985):

> "Before the enactment in 1975 of ORS 93.645 (Or Laws 1975, ch 270, §§ 1, 2 and 3), the rights of a vendee under a land sale contract were uncertain after a creditor *of the vendor* had obtained a judgment *against the vendor.* Because *the vendor* retained legal title to the property, his interest in the property was subject to a judgment lien and could be sold on execution on the judgment. * * *
>
> "In enacting Oregon Laws 1975, chapter 270, sections 1, 2 and 3, the legislature intended to relieve vendees from the dilemma posed by the then existing law."

(Emphasis added.) In support, we referred to the minutes of the Senate Judiciary Committee that held hearings on the legislation, which included the testimony of Jack McGirr of the Oregon State Bar, who explained that the new law would apply when "a seller sells property to a purchaser and then a judgment is entered subsequently against the *contract seller.*" According to McGirr, the law

> "applies to the following situation * * *: [A] seller sells property to a purchaser and then a judgment is entered subsequently against the contract seller. Under those circumstances, as long as the purchaser has no knowledge about this judgment against the seller, he can continue to safely make payments to the contract vendor or seller. If he has actual knowledge of this judgment lien against the seller, he pays his payments from that time on to the judgment creditor because the lien would attach to any future payments. What [ORS 93.645] does is provide that the purchaser under contract to sell if such a contract has been recorded shall have priority in the lien of any subsequent judgment against the seller of the property and a conveyance in fulfillment of the contract shall extinguish the lien."

Minutes, Senate Committee on Judiciary, SB 206, Mar 3, 1975, 5 (testimony of Jack McGirr).

From the foregoing it becomes clear that the statute protects purchasers under a recorded land sale contract against judgment liens entered against the seller under such a contract after the recording but while the contract is being paid and before conveyance has occurred. With that in mind, we cannot avoid the conclusion that ORS 93.645 simply does

not apply to the facts of this case. Plaintiffs' predecessor, Wigrich, entered into a land sale contract on March 16, 1999, and the contract was recorded. The contract, however, was between Wigrich and Krohn Homes, Inc. Thus, ORS 93.645 could apply only to extinguish a judgment lien against Krohn Homes, Inc., that attached after the recording of the contract.

The problem was that Krohn Homes, Inc., did not at the time of the execution of the land sale contract—or, for that matter, at any other time—own the property that was the subject of the contract. Instead, it was Krohn—not Krohn Homes, Inc.—who personally acquired the property and later conveyed it to Wigrich. By the time Krohn conveyed the property, defendant had acquired a judgment lien against Krohn and was entitled to execute on it. Krohn was not the seller of the property under the land sale contract with Wigrich. As a result, when Krohn conveyed the property to Wigrich, he did so subject to any judgment liens that had attached to it at that time.

As we have noted, plaintiffs argue that, even if ORS 93.645 applies only to extinguish judgment liens against the "seller" of realty under a contract, we should regard Krohn as the seller under the March 16, 1999, contract. The statute, however, applies only to judgments "against the seller of the property, [and] the heirs and assigns of the seller." ORS 93.645. Again, Krohn was not the seller under the March 16, 1999, agreement. The agreement plainly lists Krohn Homes, Inc., as the seller. Nothing in the record suggests that Krohn is the heir or assignee of Krohn Homes, Inc.'s, interest in the March 16, 1999, agreement.

Citing a California Court of Appeals decision, *Citizens Suburban Co. v. Rosemont Dev. Co.*, 244 Cal App 2d 666, 53 Cal Rptr 551 (1966), plaintiffs argue that, by volunteering to deliver the property to Wigrich, their predecessor, Krohn became the contractual "successor" to Krohn Homes, Inc. The Oregon statute that is at issue in this case, however, does not apply to "successors" to a seller, whatever that term means under California law. The statute refers to sellers, heirs, and assigns. Krohn is none of those as to Krohn Homes, Inc.'s, interest in the March 16, 1999, agreement. Even if that

were not the case, the California case does not advance plaintiff's argument. That case involved a corporation that had knowingly accepted the benefits of a service contract to which it was not a party. The court held that the corporation was liable under the contract based on the rule that a corporation that knowingly accepts the benefits of a contract entered into by its promoters is liable as a party to the contract. *Id.* at 677. No such circumstances or rules of law are at work in this case.

We conclude that the trial court did not err.

Affirmed.