Argued and submitted May 28, 2008, affirmed March 19, 2009

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

AJAI TERRAZAS TRIPATHI,
*Defendant-Respondent.*

Benton County Circuit Court
TM0520598; A130229

204 P3d 134

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Rebecca A. Duncan, Chief Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

In this prosecution for driving while under the influence of intoxicants (DUII), the state appeals a pretrial order excluding the results of a toxicology test that confirmed the presence of controlled substances in defendant's urine. The trial court excluded the evidence on the ground that the state had failed to lay the proper foundation for its admission. The state appeals, arguing that, under ORS 813.131(4), because the urinalysis was conducted in an accredited or licensed toxicology laboratory, the results are admissible without further proof. We affirm.

The parties stipulated to the following facts for the pretrial hearing on the admissibility of the urinalysis results. During a traffic stop of defendant, a police officer observed signs indicating that defendant was intoxicated and saw a wadded-up plastic sandwich bag sticking out of one of defendant's front pants pockets. During a consent search, the officer found marijuana and related paraphernalia in the pocket. The officer then conducted several field sobriety tests. After defendant had difficulty performing them, the officer arrested defendant for DUII and took him into custody. Defendant submitted to a breath test, which disclosed a blood alcohol content of 0.01 percent.

Defendant then provided a urine sample for toxicological testing, which was tested in the Oregon State Police Forensic Laboratory. According to the lab report, the urinalysis "confirm[ed] the presence" of amphetamine and a marijuana metabolite in defendant's urine. The laboratory did not, however, conduct any analysis of the *amount* of those substances in defendant's urine. Defendant was charged with a "controlled substance" DUII, in which the state alleged that defendant drove "while under the influence of alcohol and/or a controlled substance or substances."

Defendant did not challenge the lawfulness of the traffic stop, search, field sobriety tests, arrest, or breath test. He moved to suppress the urinalysis results, however, advancing three separate arguments. First, he argued that the urinalysis is irrelevant under OEC 401 in that, because the lab performed no quantitative testing relating to the amount of the controlled substances in defendant's urine, the

results do not correlate to whether defendant was intoxicated at the time of driving. Second, defendant argued that the state had failed to prove that the urinalysis—conducted without quantitative testing—met the foundational standards for admitting scientific evidence under OEC 702. Third, defendant argued that, under OEC 403, the urinalysis results were unfairly prejudicial to his case.

The state responded that a urinalysis need not include quantitative testing to be admissible. The state argued that, "under the statute, under 813—the statute dealing with the taking of the test, why would we be having these tests done, what would be the point of having these tests done if they weren't to be used in evidence." Instead, the state asserted, urinalysis evidence is necessary for the state to prove an element of a controlled substance DUII, that is, that the defendant took the controlled substance that allegedly impaired his or her driving. Furthermore, the state contended that the urinalysis in this case is not unfairly prejudicial because it merely corroborates the police officer's observations of defendant's impairment and also because defendant was in possession of marijuana at the time of the arrest.

The trial court excluded the urinalysis. In a letter opinion, the trial court explained that, although the urinalysis was relevant under OEC 401, the state had failed to lay a proper foundation for the evidence under OEC 702:

> "[This Court] finds that a qualitative urine test without a follow-up quantitative test, is not a generally accepted technique for drug testing and that failure to confirm the qualitative test results with a quantitative test creates a high potential rate of error. Therefore, this Court finds that the State's proffered evidence is so lacking in foundation that it is inadmissible per se under OEC 702."

The state then moved to reopen the case and to clarify and supplement the record. The state acknowledged that no quantitative follow-up test was performed in this case, but insisted that such a test is not required. The state noted that a *qualitative* follow-up test is required, but asserted that, although it had neglected to prove the matter, such a test in

fact was performed in this case in accordance with the forensic laboratory's toxicology testing procedures.

The trial court agreed with the state that the follow-up test need not be quantitative, but denied the state the opportunity to adduce additional evidence about whether a qualitative follow-up test was performed. The court did, however, "clarify" the use of the word "quantitative" in its initial ruling in a second letter opinion:

> "To clarify my earlier finding, this Court finds that the generally accepted standard for urinalysis testing in the scientific community, specifically toxicology laboratories, is the use of a screening test followed by a *confirmatory* test. The State did not present evidence at the [pretrial] hearing that any type of *confirmatory* test was performed in this case. The evidence presented was that of a drug screen test only. Without the follow-up *confirmatory* test, the urinalysis test conducted in this case does not meet the generally accepted standard for urinalysis testing in the scientific community. Therefore, the urinalysis test fails to meet the foundational requirements of OEC 702 and shall be excluded from evidence."

(Emphasis in original.)

On appeal of that pretrial order, the state contends that the trial court erred in excluding the urinalysis. According to the state, the admission of the test results in this case is compelled by ORS 813.131(4), which provides that "[a] chemical analysis of a person's urine under this section shall be performed in an accredited or licensed toxicology laboratory." "It was the legislature's intent," the state asserts, "that if the foundational requirements of ORS 813.131 were satisfied, the evidence would be admitted at trial," regardless of what the evidence code might otherwise require.

Defendant responds that the state failed to preserve that argument. According to defendant, the argument that the state advanced to the trial court focused entirely on whether the relevant implied consent law requires a urinalysis to include quantitative testing. The state, defendant notes, never asserted that the implied consent law provides

the exclusive foundational requirements for urinalysis evidence and dispenses with the otherwise applicable requirements of the evidentiary code. Regarding the merits of the state's argument, defendant disputes that the legislature intended ORS 813.131(4) to "trump" the rules of evidence or to preclude a court from performing its usual gatekeeping function with regard to scientific evidence.

■        We begin with the issue of preservation. ORAP 5.45(1) provides, in part, that "[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court." The rule of preservation ensures "that parties are not taken by surprise, misled, or denied opportunities to meet an argument," *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995), and requires the party claiming error to provide the trial court with an opportunity to correct it, *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

■        In this case, the state's position at the pretrial hearing was that, "under the statute, under 813—the statute dealing with the taking of the test, why would we be having these tests done, what would be the point of having these tests done if they weren't to be used in evidence." That certainly is stated more generally than the argument that the state presents to us on appeal. But the gist is the same, and the purposes of the rule of preservation that we have identified have been satisfied.

■        The state's argument on the merits, however, is not well taken. As we have noted, the state's sole contention is that the trial court was required to admit the urinalysis in this case because it met the requirements of ORS 813.131. Thus, the narrow issue before us is whether the legislature, in enacting ORS 813.131, intended that statute to provide the *only* foundational requirements for urinalysis evidence.

■        That contention presents a question of statutory interpretation, to which we apply the methodology described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). We examine the statutory text in its context and, if necessary, the legislative history and other aids to statutory construction to ascertain the intent of the legislature that enacted the statute. *Id.* at 610-12. In examining the statutory text in context, we are mindful that the inclusion of

a phrase in one statutory section and not in another indicates a purposeful omission. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is * * * not to insert what has been omitted * * *."). Prior interpretation of a statute by this court is relevant at the first level of analysis. *Waite v. Dempsey*, 203 Or App 136, 141, 125 P3d 788 (2005).

The statute at issue in this case—ORS 813.131—is part of Oregon's Motorist Implied Consent Law, which provides that any person operating a motor vehicle on premises open to the public is deemed to have consented to certain tests under specified circumstances. Such a person whom a police officer reasonably suspects of DUII is deemed to have consented to field sobriety testing. ORS 813.135. Consent to a breath test to determine blood alcohol content is implied if such a person is arrested for DUII. ORS 813.100(1). Similarly, consent to a blood test to determine blood alcohol content is implied if such a person is arrested for DUII and is receiving medical care as a result of a motor vehicle accident. *Id.*

The implied consent law also addresses the admissibility of breath and blood test results as evidence. ORS 813.300 provides, in part:

"(1)  *At the trial of any civil or criminal action, suit or proceeding* arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicants, if the amount of alcohol in the person's blood at the time alleged is less than 0.08 percent by weight of alcohol as shown by chemical analysis of the person's breath or blood, *it is indirect evidence that may be used with other evidence*, if any, to determine whether or not the person was then under the influence of intoxicants.

"(2)  Not less than 0.08 percent by weight of alcohol in a person's blood constitutes being under the influence of intoxicating liquor[.]"

(Emphasis added.) ORS 813.160 sets forth numerous requirements for the test results to be "valid" under ORS 813.300. *E.g.*, ORS 813.160(1)(a) (relating to blood tests); ORS 813.160(1)(b) (relating to breath tests). Regarding breath test procedures, ORS 813.322(1) provides:

"*A court shall*, at the request of a party to the case, *admit into evidence*, without certification, a copy of administrative

rules of the Department of State Police addressing methods of conducting chemical tests of a person's breath in a proceeding arising from the arrest of a person for driving while under the influence of intoxicants."

(Emphasis added.)

A separate provision of the implied consent law governs urine testing. That statute, ORS 813.131, provides:

"(1)   Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the Motorist Implied Consent Law, to a chemical test of the person's urine for the purpose of determining the presence of a controlled substance or an inhalant in the person's body if the person is arrested for driving while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance and either:

"(a)   The person takes the breath test described in ORS 813.100 and the test discloses a blood alcohol content of less than 0.08 percent; or

"(b)   The person is involved in an accident resulting in injury or property damage. A urine test may be requested under this paragraph regardless of whether a breath test has been requested and regardless of the results of a breath test, if one is taken.

"(2)   A police officer may not request a urine test unless the officer is certified by the Board on Public Safety Standards and Training as having completed at least eight hours of training in recognition of drug impaired driving and the officer has a reasonable suspicion that the person arrested has been driving while under the influence of a controlled substance, an inhalant or any combination of an inhalant, a controlled substance and intoxicating liquor.

"(3)   A person asked to give a urine sample shall be given privacy and may not be observed by a police officer when producing the sample.

"(4)   *A chemical analysis of a person's urine under this section shall be performed in an accredited or licensed toxicology laboratory."*

(Emphasis added.)

ORS 813.131 does not mention the use of urinalysis as evidence in a court proceeding. The state acknowledges that the statute does not refer expressly to the use of urinalysis results as evidence, but maintains that the legislature would not have provided for urine testing if it did not intend for the results to be used in court proceedings. Simply because the statute may anticipate urinalysis results as evidence, however, does not mean that the statute automatically deems it to be *admissible* evidence. Based on the text alone, it is unclear one way or another whether the legislature intended the requirements set forth in that statute to be the *only* requirements for urinalysis results to be admissible.

The context for ORS 813.131, however, makes clear the legislature's intent in that regard. Unlike ORS 813.160, ORS 813.300, and ORS 813.322, which expressly create criteria for the admission of breath and blood test results, there is no analogous provision in the implied consent law for urine testing. The fact that the legislature did not do so is significant and, in our view, determinative that the legislature did not intend the interpretation advanced by the state.

Nevertheless, the state asserts that one of our previous cases, *State v. Chipman*, 176 Or App 284, 31 P3d 478 (2001), establishes that ORS 813.131 provides the exclusive foundational requirements for the admission of urinalysis results. In *Chipman*, we considered the previous version of ORS 813.131(4)[1] and determined that the legislature intended, in adopting that provision, to "impose[ ] a preliminary admissibility requirement." Thus, we held that failing to comply with one of the requirements of ORS 813.131 is a basis for excluding urinalysis results. *Id.* at 296.

*Chipman* did not answer the question presented in this case, however. Just because ORS 813.131 provides a basis for excluding evidence, it does not logically follow that a urinalysis conducted in compliance with the statute's requirements is necessarily admissible. The state acknowledges the point, but still invites us to read *Chipman* "[m]ore

---

[1] ORS 813.131(4) (1997), *amended by* Oregon Laws 1999, chapter 752, section 1, provided: "The detection levels and results of urine tests given under this section shall conform to rules and guidelines of the National Institute of Drug Abuse of the United States Department of Health and Human Services."

broadly," as "important precedent establishing that ORS 813.131 governs the admissibility of urine test results." For the reasons already stated, we decline that invitation.

Based on the text of ORS 813.131 in its context, we conclude that the legislature, in enacting that statute, did not intend to eliminate the otherwise applicable foundational requirements for the admission of urinalysis evidence in a DUII case. In our view, the statutory text in context is unambiguous on that point.

The state urges us to consider the legislative history of ORS 813.131, which was originally adopted in 1995. It is appropriate for us to consider legislative history only when the intended meaning of the statutory text in its context is ambiguous, *PGE*, 317 Or at 611-12, and we have already concluded that the meaning of the statute at issue in this case is unambiguous based on its text in context.

Even assuming that the statutory text in context is ambiguous, however, there is no indication in the statute's legislative history that demonstrates that the legislature intended to provide what the state asserts. Nothing that the state has cited to us demonstrates that the legislature intended urinalysis evidence to be admitted so long as it complied with the requirements of ORS 813.131 and to eliminate a court's ability to perform its usual gatekeeping function related to the admission of scientific evidence. In fact, the legislative history on which the state relies consists solely of extensive references to testimony from various witnesses about the details of urinalysis testing protocols. There is a complete absence of any reference to the evidence code or to the admissibility of the urinalysis results at trial.

Our decision in that regard is consistent with our opinion in *State v. Fong*, 226 Or App 493, 204 P3d 146 (2009). The issue in that case was whether ORS 813.131 itself requires a quantitative test as a condition of the admissibility of urinalysis evidence in a DUII case. The defendant argued that the statute requires such testing, and we rejected that argument. 226 Or App at 497, 502. That is not the issue in this case, which is whether ORS 813.131 sets out the only conditions for admissibility of urinalysis evidence in a DUII case.

We conclude that the legislature, in enacting ORS 813.131, did not intend to dispense with the otherwise applicable foundational requirements for scientific evidence for a urinalysis performed pursuant to the implied consent law. The state offers no other reason why the urinalysis results should have been admitted in this case. Accordingly, we cannot say that the trial court erred in excluding the evidence.

Affirmed.