Argued and submitted November 5, 2015, affirmed October 19, 2016, petition for review denied February 2, 2017 (360 Or 851)

Guy A. LANDIS,
*Petitioner,*

*v.*

LIBERTY NORTHWEST
INSURANCE CORPORATION;
and Lithia Motors Support Services, Inc.; and
Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
1200057H; A154724

383 P3d 349

Julene M. Quinn argued the cause and filed the briefs for petitioner.

Carrie Wipplinger argued the cause and filed the brief for respondents Liberty Northwest Insurance Corporation and Lithia Motors Support Services, Inc.

Denise G. Fjordbeck, Assistant Attorney General, waived appearance for respondent Department of Consumer and Business Services.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

## ARMSTRONG, P. J.

In this workers' compensation case, claimant seeks review of an order of the Director of the Department of Consumer and Business Services (DCBS) determining that treatments prescribed by claimant's attending physician for pain relief from claimant's compensable and medically stationary "arachnoiditis" are not compensable medical services under ORS 656.245. The director determined that the prescribed physical therapy and transcutaneous electrical nerve stimulation (TENS) unit[1] were "palliative" rather than "curative," ORS 656.005(20); ORS 656.245(1)(c)(L), and that, as palliative care, they were not compensable because the evidence did not establish that the services were necessary to allow claimant to continue employment. ORS 656.245(1)(c)(J) (after a worker has become medically stationary, palliative medical services are compensable if "necessary to enable the worker to continue current employment or a vocational training program"). The director further concluded that the TENS unit was not compensable as a "prosthetic device." ORS 656.245(1)(c)(D) (listing prosthetic devices as a compensable medical service after a worker has become medically stationary). The relevant facts are not disputed; we review the director's order under ORS 183.482(7) and (8) for legal error and affirm.

We summarize the relevant facts from the director's findings, which claimant does not challenge. Claimant suffered a compensable injury in 2004 that the employer's workers' compensation insurer, respondent Liberty Northwest Insurance Corporation, ultimately accepted as disabling arachnoiditis, thoracic and lumbar strains combined with underlying unrelated L5-S1 disc bulge, facet arthrosis, and stenosis. At some point, claimant was prescribed a TENS unit for back pain. In 2008, claimant's physician determined

---

[1] Although it is not directly applicable here, we note that OAR 410-122-0500 defines a TENS unit as

"a device which utilizes electrical current delivered through electrodes placed on the surface of the skin. A TENS unit decreases the client's perception of pain by inhibiting the transmission of afferent pain nerve impulses and/or stimulating the release of endorphins. A TENS unit must be distinguished from other electrical stimulators (e.g., neuromuscular stimulators) which are used to directly stimulate muscles and/or motor nerves."

that claimant was medically stationary, and the claim was settled through a claims disposition agreement under which claimant released his rights to permanent total disability benefits but retained his right to medical treatment.

In May 2010, claimant sought treatment from Dr. McKellar, hoping to reduce his use of prescription pain medications for chronic lumbosacral pain. McKellar prescribed physical therapy and the continued use of the TENS unit. McKellar opined that, without the TENS unit, claimant's condition would deteriorate, and he would become bedridden.

Liberty had been paying for the TENS unit at least since 2008, but in June 2010, it denied the compensability of that treatment as well as the prescribed physical therapy, determining that the medical services were palliative rather than curative care, and that they were not compensable because claimant had not submitted information showing that he was currently employed or that the services were necessary to allow him to continue his employment. ORS 656.245(1)(c)(J). The Workers' Compensation Division of DCBS upheld the denial, and claimant requested a hearing. Ultimately, the director upheld the administrative decision, finding that claimant's conditions were medically stationary and that the services had been prescribed to treat chronic symptoms of a stable condition rather than an "acute waxing and waning of symptoms." The director thus concluded that the services were "palliative," as defined in ORS 656.005(20), and that the record did not support a finding that they were necessary to support current employment. The director also rejected claimant's contention that the TENS unit was a prosthetic device under ORS 656.245(1)(c)(D). For those reasons, the director concluded, the services were not compensable. On judicial review, claimant contends that the director has misinterpreted the relevant statutes and administrative rules and that the prescribed services are compensable.

As a general rule, medical services for a compensable injury are to be provided "for such period as the nature of the injury or the process of recovery requires." ORS 656.245(1)(a). When, however, as in this case, a worker's condition has

become medically stationary, "[n]otwithstanding any other provision" of ORS chapter 656, only those medical services listed in ORS 656.245(1)(c) are compensable. As relevant here, ORS 656.245(1)(c) lists as compensable the following medical services:

"(D)   Prosthetic devices * * *[.]

"* * * * *

"(J)   With the approval of the insurer * * * palliative care that the worker's attending physician * * * prescribes that is necessary to enable the worker to continue current employment or a vocational training program.

"* * * * *

"(L)   Curative care provided to a worker to stabilize a temporary and acute waxing and waning of symptoms of the worker's condition."

It is undisputed that claimant's compensable conditions are medically stationary. Claimant contends in his first assignment that the director erred in determining that his treatments are palliative rather than curative. As claimant correctly notes, the meaning of the two statutory terms is a legal question. *See Karjalainen v. Curtis Johnston & Pennywise, Inc.*, 208 Or App 674, 681, 146 P3d 336 (2006), *rev den*, 342 Or 473 (2007) (statutes are, by definition, law, and their interpretation is always a question of law). Under ORS 656.245(1)(c)(L), "curative care" is compensable after a claimant becomes medically stationary if it is provided "to stabilize a temporary and acute waxing and waning of symptoms of the worker's condition." Claimant points out that the term "curative" is not defined in the statutes and asserts that dictionaries define the term consistently with McKellar's opinion that claimant's use of the TENS unit and participation in physical therapy are necessary to avoid a deterioration in claimant's condition.

We need not decide whether the term "curative" has the meaning proposed by claimant, because ORS 656.245 (1)(c)(L) states that, after a claimant has become medically stationary, curative care is compensable only if it is provided

"to stabilize a temporary and acute waxing and waning of symptoms." Substantial evidence supports the director's determination that the symptoms for which the treatments were prescribed were not "temporary and acute." Rather, the medical evidence is undisputed that claimant's condition is medically stationary, meaning that "no further material improvement would reasonably be expected from medical treatment, or the passage of time," ORS 656.005(17), and that his symptoms are of long duration and chronic.[2] In a letter requesting authorization for the treatments, McKellar opined: "The patient requires palliative therapy in order to be moderately physically active in order to maintain his current health and activities of daily living[.]" On this record, the director could find that the treatments are not provided "to stabilize a temporary and acute waxing and waning of symptoms." Thus, they are not compensable under ORS 656.245(1)(c)(L).

Claimant contends in his second assignment of error that, if the prescribed treatments are "palliative," as defined in ORS 656.005(20),[3] rather than curative, then they are compensable under ORS 656.245(1)(c)(J), because they are necessary to enable claimant "to continue current employment." Claimant presented evidence that he is a licensed taxidermist, that he has started a small taxidermy business, that he has completed several projects for which he has been paid, and that the proposed medical services are necessary to allow him to continue in that business.

---

[2] In a letter to claimant's counsel at the time of the request, McKellar opined, "It is my understanding that [claimant] is medically stationary and is receiving palliative care." McKellar opined that claimant's continued use of the TENS unit and physical therapy were not "intended to 'render a diagnosis, heal or permanently alleviate or eliminate his medical conditions.' His medical condition is chronic, stable but not improving." He did later check "Yes" to a statement in a letter from claimant's counsel that the prescribed TENS Unit is "a prosthetic device directly supporting [claimant's] back, in that its primary purpose is to improve the function of a moveable body part."

[3] ORS 656.005(20) defines "palliative care" as

"medical service rendered to reduce or moderate temporarily the intensity of an otherwise stable medical condition, but does not include those medical services rendered to diagnose, heal or permanently alleviate or eliminate a medical condition."

See also OAR 436-010-0290(1) (After a worker's condition has become medically stationary, palliative care is compensable if it is "necessary to enable the worker to continue current employment or a current vocational training program.").

The director rejected claimant's contention that his taxidermy work qualified as "employment" as the term is used in ORS 656.245(1)(c)(J). The director cited portions of the record reflecting that, at a medical consultation in May 2010, claimant told his doctor that he was not working, and that claimant ignored a request by Liberty to provide information concerning his employment. The director also found that, although claimant had shown that he was a licensed taxidermist, claimant had not established that he was actually operating a taxidermy business by, for example, presenting evidence of the number of hours worked or that he was maintaining records that would be required under Oregon law to conduct such a business. The director found additionally that claimant's income from taxidermy of $100 to $150 per month was minimal and did little more than cover his expenses. The director expressed the view that "employment," as used in ORS 656.245(1)(c)(J), "must mean work that pays enough to approximately substitute for an injured worker's pre-injury earnings, not simply any trivial amount of income," and that the employment must make "a significant contribution towards an injured worker becoming financially self-sufficient." Based on the evidence, the director found that claimant's taxidermy business was in the nature of a hobby, and did not constitute "employment" within the meaning of ORS 656.245(1)(c)(J).

On judicial review, claimant contends that the director erroneously interpreted the term "employment" by, in particular, requiring that claimant demonstrate a level of income that is "self-sustaining." If such a view were to prevail, claimant complains, it would rule out part-time employment which, according to claimant, would be contrary to the legislature's policy objective stated in ORS 656.012 to "restore" the injured worker physically and economically to a self-sufficient status.

We need not decide whether the director was correct in understanding that a claimant must demonstrate a level of income that is self-sustaining in order to establish "current employment" under ORS 656.245(1)(c)(J). Even assuming that the director was incorrect, there is substantial evidence in the record supporting the director's finding

that claimant's taxidermy was a hobby, not employment. Medical records reflect that, beginning with his first visit to McKellar in May 2010 for the purpose of obtaining an evaluation of his treatment, and consistently thereafter for over a year, claimant reported that he was not working. We conclude that the director did not err in determining that claimant was not entitled be compensated for his palliative care under ORS 656.245(1)(c)(J).

In his third assignment, claimant contends that the director erred in concluding that the TENS unit is not a prosthetic device for which he is entitled to compensation under ORS 656.245(1)(c)(D). The Workers' Compensation Division of DCBS has adopted an administrative rule defining "durable medical equipment" and "prosthetics." OAR 436-009-0080.[4] "At the relevant time, OAR 436-009-0080(1) (2010) defined "durable medical equipment" as equipment that is

"primarily and customarily used to serve a medical purpose, can withstand repeated use, could normally be rented and used by successive patients, is appropriate for use in the home, and is not generally useful to a person in the absence of an illness or injury."

As defined by the department, durable medical equipment is equipment that serves a medical purpose. The rule includes

---

[4] As relevant, OAR 436-009-0080 (2010) provided, in part:

"(1) Durable medical equipment (DME) is equipment that: is primarily and customarily used to serve a medical purpose, can withstand repeated use, could normally be rented and used by successive patients, is appropriate for use in the home, and is not generally useful to a person in the absence of an illness or injury. For example:

"Transcutaneous Electrical Nerve Stimulation (TENS), Microcurrent Electrical Nerve Stimulation (MENS), home traction devices, heating pads, reusable hot/cold packs, etc. ***

"(2) A prosthetic is an artificial substitute for a missing body part or any device aiding performance of a natural function. For example: hearing aids, eye glasses, crutches, wheelchairs, scooters, artificial limbs, etc. ***

"(3) An orthosis is an orthopedic appliance or apparatus used to support, align, prevent or correct deformities, or to improve the function of a moveable body part. For example: brace, splint, shoe insert or modification, etc. ***

"(4) Medical supplies are materials that may be reused multiple times by the same person, but a single supply is not intended to be used by more than one person, including, but not limited to incontinent pads, catheters, bandages, elastic stockings, irrigating kits, sheets, and bags."

the TENS unit in a list of examples of "durable medical equipment," and also includes "Microcurrent Electrical Nerve Stimulation (MENS), home traction devices, heating pads, reusable hot/cold packs, etc."

OAR 436-009-0080(2) (2010) defines a "prosthetic" as

"an artificial substitute for a missing body part or any device aiding performance of a natural function. For example: hearing aids, eye glasses, crutches, wheelchairs, scooters, artificial limbs, etc."

Under the rule, a prosthetic substitutes for a missing body part or aids in the performance of a natural function.[5] As claimant points out, OAR 436-010-0230(12) (2010) similarly provides that a "prosthetic appliance" is "an artificial substitute for a missing body part or any device by which the performance of a natural function is aided, including but not limited to hearing aids and eyeglasses."

Claimant does not dispute that OAR 436-009-0080 (2010) categorizes the TENS unit as "durable medical equipment" rather than a "prosthetic device." He contends, however, that the medical evidence in this case shows that, as prescribed to claimant, the TENS unit was a prosthetic device as defined in both OAR 436-009-0080(2) (2010) and OAR 436-010-0230(12) (2010), because, in acting as a nerve stimulator, it aids claimant's physical functions. Indeed, in a concurrence letter, claimant's attorney obtained McKellar's agreement with a statement that the TENS unit prescribed for claimant is "a prosthetic device aiding in the performance of natural functions, such as standing, walking and sitting."

The director rejected claimant's contention that McKellar's opinion requires the conclusion that the TENS device is a prosthetic, explaining that the meaning of the term "prosthetic" as used in ORS 656.245(1)(c)(D) is a legal question, rather than a question of fact that may be determined by medical evidence, and the list of examples in OAR 436-009-0080(2) (2010) shows that a TENS unit is not a prosthetic. The director further explained:

---

[5] A prosthetic is not defined by statute.

"A prosthetic is a *mechanical* device that physically replaces or supports a body part, or physically assists a body part in performing its *mechanical* functions. The TENS electrically stimulates muscles and nerves to attempt to reduce pain. A TENS unit is a medical treatment intended to reduce pain, not to *mechanically* assist a body function. The TENS is therefore not compensable as a prosthetic device."

(Emphases added.) In claimant's view, the director erred in ascribing a requirement that a prosthetic device be "mechanical," and we agree; the rule does not require that the device be "mechanical" or aid in mechanical functions. The director's interpretation of the rule was inconsistent with its text, which defines a prosthetic as a "device" that aids in a "natural function." The rule does not require that a device that aids in a natural function be "mechanical."

But we nonetheless conclude that the director did not err in determining that a TENS unit is not a prosthetic as defined in the rule. In interpreting administrative rules, we apply the same general principles applicable to an interpretation of statutes, *see Perlenfein and Perlenfein*, 316 Or 16, 22-23, 848 P2d 604 (1993), deferring to plausible interpretations of administrative rules by the agency that promulgated them. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994); *Brand Energy Services, LLC v. OR-OSHA*, 261 Or App 210, 214-15, 323 P3d 356 (2014); *SAIF v. Donahue-Birran*, 195 Or App 173, 181-82, 96 P3d 1282 (2004). OAR 436-009-0080 (2010) shows an intention by the Workers' Compensation Division to categorize items based on key characteristics. So, for example, a "durable medical device" is a device that is "primarily and customarily used to serve a medical purpose, can withstand repeated use, could normally be rented and used by successive patients." A TENS unit is listed as an example of such a device. The primary characteristics of durable medical devices are that they are prescribed for a medical purpose and can be reused by different patients. A prosthetic, in contrast, is a device that "substitute[s] for a missing body part" or "aid[s] performance of a natural function." The primary characteristics of prosthetics are that they take the place of a body part or aid in a natural function. The examples of prosthetic devices are items that are personal to the

individual and that, unlike a durable medical device, could not be rented and used by successive patients. By implication, a prosthetic is personal to the individual and is not an item that could be reused by different patients.

It is conceivable that certain items could have characteristics within more than one of the rule's categories. For example, the TENS unit, although prescribed for the medical purpose of relieving pain, has the incidental effect of aiding in natural functions. Certain items in the category of "prosthetic device," such as eyeglasses or hearing aids, might be viewed as serving a medical purpose. But we conclude that the director's interpretation of the text of the rule as establishing mutually exclusive categories and as characterizing a TENS unit as a durable medical device and not also a prosthetic is a plausible one entitled to deference.

Claimant contends, generally, that the administrative rule mistakenly limits "the full scope of compensable prosthetic devices in the statute." But, other than contending that the TENS unit should be considered a prosthetic because it aids claimant with natural functions, he does not offer any reason why the agency's definition or its interpretation conflicts with the statute.[6] We therefore do not address the contention further.

Affirmed.

**EGAN, J.,** dissenting.

The majority concludes that the director did not err in determining that a TENS unit is not a prosthetic as defined in OAR 436-009-0080 (2010) and in accordance

---

[6] As noted, there is no statutory definition of a prosthetic device. In determining whether the rule's definition of the term is inconsistent with the meaning of the undefined term as used in the statute, we would ordinarily attempt to discern the legislature's intentions based on the plain and ordinary meaning of the term. *See Dowell v. Oregon Mutual Ins. Co.*, 268 Or App 672, 676, 343 P3d 283, *rev allowed*, 358 Or 145 (2015) (when a term is not statutorily defined, courts look to dictionary definitions to ascertain the plain meaning of the term). The commonly understood meaning of the term "prosthetic" as defined in dictionaries is, if anything, more restrictive than the administrative rule's definition. *See Webster's Third New Int'l Dictionary* 1822 (unabridged ed 2002) (defining "prosthesis" as "an artificial device to replace a missing part of the body"); *Stedman's Medical Dictionary* 1460 (27th ed 2000) (defining "prosthesis" as "a [f]abricated substitute for a damaged or missing part of the body").

with ORS 656.245(1)(c)(D). I respectfully dissent. I would conclude that the TENS unit is a compensable prosthetic device.

The majority correctly states the undisputed facts. I briefly summarize the facts pertinent to my dissent. Claimant suffered a compensable injury and, at some point, was prescribed a TENS unit for back pain. Claimant later sought treatment from Dr. McKellar and he prescribed the continued use of the TENS unit. McKellar opined that the TENS unit was "a prosthetic device directly supporting Mr. Landis' back, in that its primary purpose is to improve the function of a moveable body part." McKellar opined that the TENS unit aided in the performance of claimant's natural functions of "standing, walking and sitting—or what are normally considered activities of daily living."

Liberty had been paying for the TENS unit, but in June 2010, it denied the compensability of that treatment. The Workers' Compensation Division of the Department of Consumer Business Services upheld the denial, and claimant requested a hearing. The director upheld the administrative decision, rejecting claimant's contention that the TENS unit was a prosthetic device under ORS 656.245(1)(c)(D). The director explained:

> "A prosthetic is a *mechanical* device that physically replaces or supports a body part, or physically assists a body part in performing its *mechanical* functions. The TENS electrically stimulates muscles and nerves to attempt to reduce pain. A TENS unit is a medical treatment intended to reduce pain, not to *mechanically* assist a body function. The TENS is therefore not compensable as a prosthetic device."[1]

(Emphases added.) For those reasons, the director concluded, the services were not compensable.

ORS 656.245(1)(c)(D) lists "prosthetic devices" as a compensable medical service. A "prosthetic device" is not defined by statute, but the director's administrative rule— OAR 436-009-0080(2) (2010)—defines a "prosthetic" as

---

[1] The majority concludes that the rule does not require that the device be "mechanical" or aid in mechanical functions and that the director's interpretation of the rule was inconsistent with its text. 281 Or App at 647. I agree.

"an artificial substitute for a missing body part or *any device aiding performance of a natural function.* For Example: *hearing aids, eye glasses, crutches, wheelchairs, scooters,* artificial limbs, etc."

(Emphases added.) OAR 436-010-0230(12) (2010) similarly provides that a "prosthetic appliance" is "an artificial substitute for a missing body part or *any device by which performance of a natural function is aided,* including but not limited to *hearing aids and eyeglasses.*" (Emphases added.)

The same administrative rule also defines "durable medical equipment." OAR 436-009-0080(1) (2010) provides:

"Durable medical equipment (DME) is equipment that is primarily and customarily used to serve a medical purpose, *can withstand repeated use, could normally be rented and used by successive patients, is appropriate for use in the home,* and is not generally useful to a person in the absence of an illness or injury. For example: *Transcutaneous Electrical Nerve Stimulation (TENS),* Microcurrent Electrical Nerve Stimulation (MENS), home traction devices, heating pads, reusable hot/cold packs, etc."

(Emphases added.)

As discussed by the majority, claimant does not dispute that OAR 436-009-0080 (2010) categorizes the TENS unit as "durable medical equipment" rather than a "prosthetic." He contends, however, that the medical evidence in this case shows that, as prescribed to claimant, the TENS unit was a prosthetic as defined in both OAR 436-009-0080(2) (2010) and OAR 436-010-0230(12) (2010), because, in acting as a nerve stimulator, it aids claimant's physical functions. 281 Or App at 646.

In rejecting claimant's position, the director did not acknowledge, take into account, or even conceive that certain items could possess characteristics that fall within more than one category. That is, the director ignored the reality that some appliances fall into the categories of both prosthetic and durable medical equipment, based on the definitions in the rule. For example, the TENS unit, although prescribed for the medical purpose of relieving pain, has the incidental effect of aiding in the natural functions of the back. As the terms "prosthetic" and "durable medical

equipment" are applied to other body parts, certain items in the category of "prosthetic," such as eyeglasses or hearing aids, also serve a durable medical purpose. Nevertheless, the majority concludes that the director's interpretation of the text of the rule as establishing mutually exclusive categories and characterizing a TENS unit as durable medical equipment and not also a prosthetic is a plausible one entitled to deference.

That approach, which the majority upholds, is unnecessarily binary and ignores that workers' compensation is a complex statutory scheme designed to help injured workers recover from injuries, to "provide a fair and just administrative system for delivery of medical *** benefits to injured workers that reduces litigation," and "restore[s] the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable." ORS 656.012(2)(b), (c). Even the majority admits that many of the devices listed as prosthetics in OAR 436-009-0080(2) (2010) are indeed nothing more than durable medical equipment. 281 Or App at 647-48. The majority, however, leaps to the unsupportable conclusion that this durable medical equipment, a TENS, is not a prosthetic as a matter of law because it is specifically listed as durable medical equipment, regardless of its actual function as used by claimant. When the majority entertained that mutually exclusive categories were not grounded in reality, as it must, then it should have also concluded that the director's interpretation of the rule, which is reliant on that mutual exclusivity, is not plausible. Instead, the majority tries to support the director's unrealistic vision of the world by stating that "[t]he examples of prosthetic devices are items that are personal to the individual and that, unlike a durable medical device, could not be rented and used by successive patients. By implication, a prosthetic is personal to the individual and is not an item that could be reused by different patients." 281 Or App at 647-48. That conclusion, however, is contrary to other department decisions and our case law.

For example, in *Toni L. Anderson*, 16 CCHR 202 (2011), the director determined that compression stockings, which fits the definition of medical supplies under the rules,

were nonetheless prosthetic, because they "improve[ed] the function of the leg and the circulatory system." 16 CCHR at 204. There is nothing about stockings, however, that make them "personal to the individual." In *Sedgwick Claims Management Services v. Jones*, 214 Or App 446, 454, 166 P3d 547 (2007), we determined that a new modified van to accommodate claimant's wheelchair qualified as a compensable medical service under ORS 656.245(1)(b). In so concluding, we noted that modifications to accommodate a prosthetic were compensable as "a necessary extension" of the prosthetic. *Id.* at 453. However, again, there is nothing about a van modified to accommodate a wheelchair (*i.e.*, any wheelchair) that is "personal to the individual." The majority's distinction between prosthetics and durable medical equipment does not stand up in light of those prior interpretations. Instead of approving the director's unrealistic binary approach, I would conclude that claimant's TENS unit, which stimulates a nerve to aid that nerve's natural function to assist claimant in the functions of standing, walking, and sitting, qualifies as a prosthetic device. That TENS unit aids in the function and use of a body part, much like a compression stocking or a vehicle.

Some of the prosthetic appliances listed in the director's own rule support my view, because those devices do not substitute for a function, but assist and improve that function. Eyeglasses are an optical aid; glasses do not substitute for eyes, but increase the ability to see. Simple hearing aids amplify sound while more sophisticated hearing devices actually provide electrical signals that stimulate the cochlear nerve. Although not listed, a pacemaker is a recognized prosthetic that electrically assists in maintaining the proper rhythm of the heart. In the same manner, a TENS unit that stimulates the nerves of the back so as to assist the neurologic function operates as a prosthetic device. Any other conclusion has the effect of amending and restricting ORS 656.245(1)(c)(D) through an administrative rule. Therefore, I would conclude that the director's interpretation of OAR 436-009-0080 (2010) is not plausible because it erroneously limits the full scope of compensable prosthetic devices that the statute allows. *See Cook v. Workers' Compensation Dept.*, 306 Or 134, 138, 758 P2d 854 (1988).

In addition, I would conclude that the director erroneously found that the TENS unit only reduced claimant's pain, and did not mechanically assist a body function. That finding is not supported by substantial evidence in the record, because the treating physician stated conclusively that the unit assisted claimant in the activity of standing, walking, and sitting.

For those reasons, I would conclude that the TENS unit is a compensable prosthetic device. I would reverse the director's decision and remand this case for the director to reconsider it under the correct legal standard.

I respectfully dissent.